MARGARET C. REMINGTON, Respondent, *v.* WILLIAM H. WALKER, as Executor, etc., Impleaded, etc., Appellant.

(Argued March 24, 1885 ; decided April 28, 1885.)

THIS action was brought by plaintiff as legatee under the will of Daniel J. McPherson, deceased, against the surviving executors and the executor of James M. Walker, a deceased executor, for an accounting, and to compel defendants to pay plaintiff a balance of her legacy alleged to be unpaid.

The opinion is given in full.

"Daniel J. McPherson died in August, 1857, leaving a last will and testament, by which he gave to the plaintiff, who was his granddaughter and an infant about two years of age, a legacy of $2,500. That sum was to be kept invested by his executors, they paying out of its income such amounts as in their judgment should be needed for her support and education, and the principal, together with unexpended accumulations of interest, was to be paid to her at the age of twenty-one. The will further gave some small specific legacies and then bequeathed the rest and residue of the testator's estate to the testator's daughter, Elizabeth, to be paid to her after five years, or more if the executors should deem best, and in the mean time to be kept invested. The duty of the executors to the plaintiff has not been entirely performed and she has not received the complete amount of her legacy with its proper interest. The referee so finds, and specifically determines upon the facts that the executors willfully neglected and omitted to perform their duties as such by omitting to set apart the amount of the legacy bequeathed to the plaintiff, and by omitting to reinvest from time to time the accumulations of interest accruing upon it. The estate was amply sufficient to pay the plaintiff in full, something over $5,000 having been paid to the residuary legatee. The executors, all of whom qualified, were three in number, and were Malcolm McPherson, Peter J. McPherson, who died in 1873, and the defendant's testator Walker, who has died since the commencement of the action. The estate was managed by the two sons, Malcolm and Peter, until April 12, 1859, at which time all the se-

curities and the money on hand were turned over to Walker, who then became the sole acting executor and took upon himself the entire management of the estate. Among the securities was a bond given by Malcolm McPherson to the testator for $2,500, secured by a mortgage upon the farm of the obligor. Upon this bond and mortgage Malcolm made one payment of $444 on June 16, 1858, and three smaller payments later; these last amounting together to a trifle over $200; and with these exceptions paid nothing for twenty years, and at least as early as 1870 gave notice to Walker that he could not pay, until the mortgage having been assigned to plaintiff after becoming of age, and a foreclosure having been commenced, he paid the contract debt with simple interest. This action was then brought to ascertain and recover the balance unpaid to plaintiff, and the defense interposed by Walker is that he is not liable at all, but if liable, then for a less amount than that recovered.

" The action, it must be observed, is not brought against Walker to charge him for the waste or misconduct of his co-executor. It stands upon no such ground. It is brought against the two surviving executors for the non-performance of their duty under the will, a duty equally resting upon both, but which one is seeking to escape by shifting it singly upon his insolvent associate.

" One contention is that the mortgage of Malcolm McPherson was so set apart for the benefit of the plaintiff as to have become the trust fund and held by Malcolm as the trustee. That is pleaded with a consciousness of doubt. The allegation is that the mortgage was 'substantially held as representing the legacy of the plaintiff.' The referee finds that no fund was set apart for and appropriated to the use and benefit of the plaintiff, and the evidence fully justifies the finding. It shows at the most that somewhere along the line of administration the mortgage was regarded in the mind of one or more of the executors as a source from which the legacy should be realized. The defendant Walker was asked the direct question upon his re-examination by his own counsel: 'Did you set apart or appropriate this bond and mortgage as a fund out of which to pay plaintiff's legacy ;' and he replied : 'Not really, for this reason :

we failed to collect money from Malcolm McPherson for the maintenance of this orphan girl; she needed money for her maintenance, education and clothing; I mean the plaintiff who was then a minor; it was suggested to us as the proper source to pay this legacy, as the testator had required us to keep her part invested until she was of age and he made this investment; we decided *or understood* that this should be the *source* to pay this legacy.' And that answer is every particle of proof which the case contains tending to show that the bond and mortgage, or their amount, as assets in the hands of Malcolm, became the separated trust fund, except Walker's further statement that after the debtor's refusal to pay, 'I still considered in my own mind this bond and mortgage as the fund out of which the plaintiff should receive her pay.' Walker said 'not really;' and the facts show that such was the truth.

"In 1858, Malcolm paid on the bond $444, to Peter as executor. The latter's account shows that not one dollar of this sum went to the plaintiff or to her credit as beneficiary, but the whole of it was applied as general assets of the estate to its general purposes. On January 18, 1865, Malcolm paid $100 on the mortgage, and paid it to Walker. His account shows that no part of that payment went to the plaintiff, since from May, 1864, to July, 1872, a period of eight years, nothing whatever was paid for her support or education; and this payment, never credited to or set apart for the beneficiary, went into the general assets of the estate. Again in January, 1868, Malcolm paid $99.26. We know what that was for and what became of it. Walker as executor wanted that amount to pay taxes assessed against the general estate. The payment was made for that purpose and was so used without the least hesitation. On the other hand, every payment to the beneficiary came out of the general assets, and there never was an instance in which her right was denied and her claim remitted to the specific assets in Malcolm's hands. In the account of the executors, made up before the surrogate no trust fund appears, and there is no credit of such a fund as paid over by the executors to one of them as trustee. So that if one executor could make the other sole trustee and shift upon him the trust duties which belonged to both, Walker did not do it, and as the referee cor-

rectly found, omitted to set apart a fund for the plaintiff and invest its surplus of interest. Certainly nothing of the kind was done or pretended before Walker took the assets. At that time the legacy had accumulated two years of interest and had reached over $2,800, while the mortgage by payments used for the estate had been reduced to about $2,300. It was not sufficient for the trust fund and never became so, and could not alone constitute it, or dispense with further investment.

" It is further said that the plaintiff was estopped by her foreclosure action in which she claimed and was refused compound interest. She accepted an assignment of the mortgage as so much on account. She did that at the suggestion of the surrogate, upon his assurance, which nobody disputed, that she was entitled to compound interest on her legacy. Such interest was computed upon the mortgage in the face of Malcolm's protest, and put in the assignment as its consideration by the surrogate, and the amount entered in the accounts provisionally; the surrogate explaining that he could not settle the accounts, until it was ascertained how much the plaintiff realized from the mortgage. It is plain that she was passive in the hands of the surrogate and of Walker and accepted the assignment to force from Malcolm the amount secured by the mortgage. She began the foreclosure and it passed into the ordinary judgment. That action was against the mortgagor and other persons as holding subsequent liens or interests. It raised an issue over the amount due upon the mortgage, the complaint claiming a balance reached by compounding the accruing interest. The judgment was for the principal and simple interest only. It is suggested that the plaintiff could have recovered compound interest upon the mortgage and owed to Walker the duty of so doing, and has lost her right by her own fault. Whether, as a pure question of law, she could have done so is a matter upon which we are not agreed; but conceding that possibility as between her and Malcolm, it certainly was not possible as against the subsequent incumbrancers. We do not know the character or amount of their claims, and they may have been enough to have exhausted the entire surplus in the farm over and above the mortgage and simple interest. If we could surmount that difficulty, others remain. No such de-

fense is in any manner pleaded and certainly was not proved. Producing the judgment-roll does not establish it. The action may have been brought in the form it assumed with the knowledge and assent of Walker; he may have been furnished with opportunity to direct or control it; and even may have done so. With no such issue pleaded the plaintiff was not bound to show these facts. Until Walker alleged a breach of duty on her part, she was not called upon to rebut it. There is no finding by the referee of any such neglect on her part and no request for any such finding, and it is evident that no such issue was raised or tried. Neither do we know what occurred on the trial of the foreclosure action. The plaintiff may have shown all her equities against Malcolm and in good faith sought to enforce the payment of compound interest. Indeed it is quite evident that she did so, for the findings of the Special Term disclose all the material facts essential to those equities. The findings include the death of the testator, the probate of his will, the issue of letters to the three executors, the legacy to plaintiff set out at length, the death of executor Peter, the state of executors' accounts, the non-payment by Malcolm, the principal charge of the estate by Walker, the payments made by him to plaintiff on account of her legacy, the assignment by him to her of the bond and mortgage. What more the plaintiff could have put into the case by way of enforcing her equities it is not easy to see. If her pleadings were not perfect her proofs were complete and all the facts were found, and upon them the Special Term determined as matter of law "that defendant is liable to plaintiff upon said bond and mortgage in the amount of the principal thereof with interest thereon at the rate of seven per cent per annum and *not compounded*." The fact of that negative finding shows that the whole question of compound interest on the mortgage was raised and presented and decided against the plaintiffs, and in the face of that adjudication we are asked to say that it was her fault that she did not succeed. No neglect of hers is pointed out. The Special Term had before it all the needed facts, for the findings recite them, and how or where, if she did owe any duty to Walker, she failed to perform it, we find it impossible to discover. If, outside of the foreclosure,

she might have set up a separate cause of action against Malcolm, founded on his violation of duty as executor, which would have made trouble over the question of parties and joinder of causes of action, she was not bound to do so, and was at liberty instead to maintain a separate action against both executors. Walker was no party to the foreclosure action, and can be relieved by it only to the extent that it produced satisfaction of his debt.

"So far we have gone with the respondent; but upon the question of the amount of Walker's liability, and the mode of computation to ascertain it, we disagree with the courts below in one important particular. The result reached could not easily have been more severe if Walker had acted in bad faith, and been convicted of despoiling the estate. There is no ground for any such severity. The referee finds that the executor acted in good faith and with no wrong intention, but omitted to perform a duty which the will charged upon him. In such a case no penalty is to be exacted, and he should be put in no worse condition than if he had performed his duty. The account should first be made up from the commencement of the executorship to the decree against both executors, since both are liable to the plaintiff, and only in that way can the sum due her be ascertained. The respective liabilities of the executors between themselves are after questions. (*Adair* v. *Brimmer*, 74 N. Y. 539.) In thus making it up it is proper to charge full interest upon the principal of the legacy, since that was received on the whole estate, and there is no complaint of any failure to obtain it or any difficulty in doing so. But in the investment of the small sums of surplus interest, accruing year by year, the rate should not only be reduced to six per cent, which was done, but the executors should be allowed to hold the interest accrued during one year through the whole of the ensuing year without investment, both because that is a not unreasonable allowance in view of the difficulty of reinvesting small sums, and because annual charges upon such income for taxes and support were to be paid out of it. The account, thus made up to the date of Malcolm's payment of his mortgage, that may be applied upon it, and the result will be to prevent any injustice to Walker growing out of the fact that the ac-

count begins in 1857, while he only took the assets in 1859, for Malcolm was liable, if Walker was not, for the income and interest accruing before 1859, and his payment over of assets in his hands to plaintiff should be first applied to extinguish his own separate liability, if it was such, leaving the balance to apply *pro tanto* as satisfaction upon Walker's liability. The latter could not appropriate Malcolm's payment to his own credit, without first discharging the former's separate burdens out of it, and it is that error which explains the computation of the appellant, producing a balance in his favor.

" It does not seem necessary to send the case back for a re-trial with the consequent delay and expense. The judgment should be modified by reducing it to the amount resulting from such a mode of computation as is herein indicated, and by making that amount primarily, a debt against Malcolm McPherson and collectible of Walker only after failure to collect of Malcolm; and as modified should be affirmed. If counsel do not agree as to the amount and form of the judgment to be entered, it may be settled before the judge writing this opinion. Neither party is to have costs against the other in this court."

*E. A. Nash* for appellant.

*J. M. Dunning* for respondent.

FINCH, J., reads for modification of judgment, and for affirmance as modified.

All concur.

Judgment accordingly.