ORANGE COUNTY.—HON. R. C. COLEMAN, SURRO-
GATE.—July, 1886.

TAYLOR *v.* SHUIT.

*In the matter of the judicial settlement of the ac-
count of* MORGAN SHUIT *and* JAMES W. TAYLOR,
*deceased executors of the will of* HUDSON MC-
FARLAN, *deceased.*

An inventory and account, filed by co-executors, though evidence of a *joint*
possession of securities and receipt of moneys by them, is not conclu-
sive so as to preclude proof that the same were in fact held and received
exclusively by one of their number.

Glaucus v. Fogle, 88 *N. Y.*, 434—explained.

The law does not make an executor a guarantor of the acts of an associate,
in matters pertaining to their common trust, *e. g.*, in respect to mak-
ing proper provision for the payment of legacies, but only requires of
him reasonable diligence in seeing to it that duties imposed have been
discharged.

Remington v. Walker, 99 *N. Y.*, 626—distinguished.

Upon the hearing of a special proceeding instituted to compel an account-
ing, by the administrators of S. and T., two deceased executors, in re-
spect of the proceedings of the latter, it appeared that the principal
decedent, who died in 1873, by his will, had bequeathed $11,000 to said
executors, in trust for the benefit of a legatee for life; with remainder
over; that T., who was an attorney in good standing, and extensively
engaged in the business of lending money, had had the active manage-
ment of the trust, and died insolvent, having misappropriated the
bulk of the funds,—this being rendered possible by the circumstance
that S., who was a farmer, had naturally been led to repose confidence
in his co-executor and left the transaction of the business mainly to
him. But the evidence failed to disclose any conduct, on the part of
S., whereby T. was enabled to exercise greater rights, as to the cus-
tody of the property or receipt of money, than each of several repre-
sentatives possesses by law. The account of the executors had been
settled in 1880, when a decree was rendered determining that the funds
of the trust had been invested by T., and were held by him, and in ef-
fect discharging S. from further liability.—

*Held*, under all the circumstances, that the estate of S. was not liable for
the *devastavit* of T., but that the total deficit should be charged to
the estate of the latter.

HUDSON McFARLAN died in 1876.   By his will he gave to his executors, in trust, legacies to the amount of $11,000, for the benefit of Ann Yereance and her children, the interest to be paid to Mrs. Yereance during her life, and the principal to her children at her death.

About April 1st, 1880, the executors had an accounting before the Surrogate of Orange county, upon which a decree was made, settling the account as filed, and determining that the trust funds for those legacies had been invested by James W. Taylor, and the securities were held by him, and, in effect, discharging executor, Shuit, from any further liability.   James W. Taylor died in 1883, and Morgan Shuit died in 1884.   C. E. Cuddeback was appointed successor to the trust, and having ascertained that most of the trust fund had been wasted, proceedings were had, in which the decree was set aside as to Mrs. Yereance and her children, by reason of a failure to appoint a special guardian to represent the guardian, who were all minors, and for other reasons.

These proceedings were then instituted to compel the representatives of the deceased executors to render an account of the proceedings of said executors.   The other facts sufficiently appear in the opinion.

C. E. CUDDEBACK, and L. E. CARR, for petitioners.

WADSWORTH & GOTT, and S. W. FULLERTON, for administrators of Shuit.

SCOTT & HIRSCHBERG, for administrator of Taylor.

THE SURROGATE.—Both executors are dead, and we are, therefore, without their testimony as to what

part each performed in the execution of this trust. Such information as we have has been derived principally from written documents, which are generally statements of results rather than of the manner in which such results were accomplished.  For instance, the inventory shows the existence of certain securities, constructively in the joint possession of both executors, but not showing which of them took the actual possession; so their account on file shows constructively the 'joint receipt of moneys, and not who actually received and retained, or paid out the money.  Of this, however, there is some evidence by the persons making payments, and the memoranda in the handwriting of Mr. Shuit.

While the inventory and account are evidence of such joint possession of securities and receiving of moneys, I do not consider them as controlling on that point so as to preclude inquiry by other evidence as to the actual fact.  As I read Glaucus v. Fogle (88 *N. Y.*, 434), the court only held that the executors' account was sufficient evidence to sustain the finding of the Surrogate that the executor and executrix received and held the fund jointly, and not that the account was conclusive evidence of that fact.  At the time the executors sought to have an accounting, they had completed their duties connected with the administration of the estate, except so much thereof as related to those legacies given the Yereance family, to be held in trust by the executors during the life of Mrs. Yereance.  All the assets of the estate had been reduced to possession, all debts and expenses had been paid, and the general and residuary legacies .

satisfied. It only remained to set apart and retain and invest, if not already invested, $11,000 for this trust, for the benefit of Mrs. Yereance and her children. Did they do this?

By their account, it is made to appear that there remained of the estate securities to the amount of $10,700, and cash, $300, and also $770 accrued interest, which had been paid over to Mrs. Yereance. As a fact, they should have had these assets, and the evidence shows that it all should have been in the possession of Judge Taylor, as follows:

| | |
|---|---:|
| Knight Mortgage, . . . . | $1,000 |
| Taylor      ,, . . . . | 400 |
| Smith       ,, . . . . | 1,000 |
| Goshen Water Bonds, . . . . | 2,300 |
| Montgomery Town Bonds, . . . | 1,000 |
| Stillman Mortgage, : . . | 2,500 |
| Weatherbee Mortgage, . . . | 2,500 |
| | $10,700 |
| Cash, . . . . | 1,070 |

The accrued interest was afterwards paid by Judge Taylor to Mrs. Yereance, together with interest which should have subsequently accrued up to April 1st, 1882. At his death only the following assets belonging to this estate were found and delivered to the successor in the trust:

| | |
|---|---:|
| Goshen Water Bonds, . . . | $1,000 |
| Montgomery Town Bonds, . . . | 1,000 |
| Taylor Mortgage, . . . | 400 |
| | $2,400 |

The balance of the fund had been misappropriated

and wasted by Judge Taylor. His estate is conceded to be insolvent, and it is sought, on this accounting, to hold the estate of Mr. Shuit liable for the whole, or some part of the deficiency. The evidence shows that Mr. Shuit has accounted for all moneys belonging to this estate which have actually come into his hands. His liability, therefore, if any, must grow out of some wrong done, or duty omitted, with respect to that part of the estate which has been wasted by Judge Taylor.

It is claimed, in the first place, that Mr. Shuit is liable for not having properly invested the fund for the benefit of Mrs. Yereance and her children. Under the will, it was undoubtedly the duty of each executor, the estate being sufficient for that purpose, to see that these legacies were properly provided for, and the money invested for the benefit of the legatees. I do not think the law, in this regard, ordinarily makes one executor the guarantor of the other's acts, but it does require of him reasonable diligence in seeing to it that the duty imposed has been discharged.

I think the distinction between this case, and that of Remington v. Walker (99 *N. Y.*, 626), upon which the counsel for the legatees rely, is that while, in that case, there was a plain failure to make the investment for the required purpose, here the assets remaining could have been held for no other purpose. The residuary and other legatees had all been satisfied, and the interest which accrued thereon was only used for Mrs. Yereance. And, while, as I shall hereafter state, some of the securities were not held by Judge Tay-

lor, as represented, still Mr. Shuit believed he did,—which, in my opinion, satisfied the law as to Mr. Shuit's duty.

It is further claimed that Mr. Shuit's conduct, in connection with certain of the assets of the estate, has been such as to create a liability. I will, therefore, consider the testimony as to each of them. The Knight and Smith mortgages, and $1,000 of the water bonds, were collected by Judge Taylor, and not invested by him, unless the loan to Kescall of $2,500 was from these moneys,—whether it was or not, he afterwards received the money on it, and did not reinvest it.

Now, as to Mr. Shuit's connection with these assets. The Knight bond and mortgage had, at one time, been in the possession of Mr. Shuit, and he had received and endorsed interest upon the bond. The principal and last payment of interest were, however, at his suggestion, paid by the mortgagee to Judge Taylor, to whom Mr. Shuit had, in the meantime, delivered the bond and mortgage. Athough this mortgage appears upon the executors' account as being then held by them, it had, at that time, in reality been paid to Judge Taylor. There is no evidence that Mr. Shuit ever had the actual possession of the Smith mortgage, except as it may be inferred from his having received interest on it. The mortgage was foreclosed by Judge Taylor and he received the money due upon it. The water bonds remained in the bank where they had been left by the testator, and were never taken into the actual custody of either executor. One thousand dollars of them became due, and

were collected by the officers of the bank and placed to the joint account of both executors, but the money was drawn from the bank by Judge Taylor. At this time Mr. Shuit supposed his connection with the estate had ceased by reason of the settlement and decree, and there is no evidence to show that he knew of the collection of the bonds, or that the proceeds were placed to the joint credit.

Judge Taylor had an equal right with Mr. Shuit to receive the money on the Knight mortgage, and cancel the same, whether he had the possession of the mortgage or not. Mr. Shuit did no act which, in any way, enabled Judge Taylor to receive the money from the water bonds, and I fail to find any act, active or permissive, which gave to Judge Taylor a better or fuller right than he already had to receive the proceeds of either the Knight or Smith mortgages, or the water bonds. It is true, probably, that, if Mr. Shuit had not suggested payment of the Knight mortgage to Judge Taylor, it might have been paid to him, and he might, also, have taken such steps as would have secured the payment to himself of the Smith mortgage and the water bonds. Nothing, however, in Judge Taylor's situation or affairs, as then known, necessitated this course. At these times he was an attorney at law in the city of Newburgh, and down to the time of his death engaged in an extensive loaning business, while Mr. Shuit's occupation was that of a farmer,—circumstances which naturally and properly led to the course pursued.

The Stillman and Weatherbee mortgages never legally belonged to the McFarlan estate. I am,

therefore, of opinion that no act of Mr. Shuit, in regard to them, created a liability. If the $5,000, which, in the executors' account they are made to represent, came from the Vulcan mortgage, then, the only act, of which there is any evidence, done by Mr. Shuit in connection with that mortgage, was the execution of a satisfaction with Judge Taylor, after Judge Taylor had received the money. If these mortgages were made to stand for other moneys than the proceeds of the Vulcan mortgage, which Judge Taylor had collected, then we have no evidence of any act of Mr. Shuit's in connection therewith. Mr. Shuit undoubtedly knew that Judge Taylor had, or ought to have had, this sum of money, belonging to this estate, in some shape, either in cash, or in investments, but the circumstances only required from Mr. Shuit a knowledge on his part of the apparent discharge by his co-executor of his duty. He was not obliged to give that scrutiny and care which he would have, if they were investments he was making of the funds he held. By an examination of the papers he might have discovered that the assignments were in blank, but he had a right to rely upon his co-executor's legal knowledge, not having reason to suspect fraud.

The leading case, among the later decisions of our courts, in which the liability of one executor in cases of this kind, is passed upon is Croft v. Williams (88 N. Y., 384). In the opinion, Judge FINCH, on page 389, says that the executor " must, in some manner, know and assent to the misapplication,—he must be a consenting party to the waste, or neglect some duty consequent upon his knowledge of a misapplication intended, or in progress. A wrong done, or a duty

omitted, must lie at the foundation of his liability.". Upon a careful consideration of the evidence, I have failed to see the wrong done, or the duty omitted on the part of Mr. Shuit, which made him liable to these legatees. I think this view is fully sustained in Paulding v. Sharkey (88 *N. Y.*, 432), where one executor endorsed a check, given for the purchase price of real estate sold by them, payable to his order, and delivered it to his co-executor, who drew the money on it, and misapplied it, and yet the first was held not liable. In that case, the insolvent executor could not have obtained the money, except for the act of his co-executor; while, in this case, no act done by Mr. Shuit was necessary, to enable Judge Taylor to secure that part of the estate wasted by him.

I, therefore, direct, that the decree made upon this accounting charge the estate of James W. Taylor with the whole fund and interest which have been misapplied, and that the estate of Morgan Shuit be discharged.