RANDOLPH F. PURDY, Respondent, *v.* AGNES LYNCH, as Executrix of JAMES LYNCH and Another, Appellants.

*Trustee — when liable for the acts of his associates — his personal convenience no excuse for a failure to perform a duty — facts that do not create an estoppel in favor of a trustee charged with the waste committed by his associate.*

Where trustees have obtained joint possession of a trust fund, and thereafter one of them turns over the funds to his co-trustee, he will, in case of the misappropriation thereof by his associate, be held responsible therefor.

The personal convenience and comfort of a trustee cannot be accepted as an excuse for a failure to perform a duty.

A trustee is responsible for his own acts, and not for those of his associates, and if the latter collect and misapply moneys, the trustee who has not received it is not liable for the waste. If he is merely passive and does not obstruct the acts of his associates, he is not liable for the latter's waste, if guilty of no negligence himself.

After the appointment of a receiver of the Guardian Savings Institution in November, 1871, one Roche, an officer thereof, conveyed all his real estate to one Quinlan and two other persons, in trust to sell it, and with the proceeds pay the creditors of the savings institution the several amounts due them on the

1st of July, 1872, after which they were to reconvey the remaining property to the maker of the trust. It was provided that the payments should not be made to the creditors except on their delivery of a subrogation of their claims against the bank (of which Quinlan was the receiver) to Roche, the maker of the trust. All of the trustees qualified and entered upon the discharge of the duties of such office.

Thereafter Roche conveyed to one McGowan the reversion in such real estate in trust, to pay his personal indebtedness to certain creditors named, and to reconvey the remaining property to him, after the payment of the expenses of executing the trust.

Upon the trial of an action brought by McGowan against Quinlan and his associates to compel them to convey to him such of the real estate as remained unsold, it was shown that there was actually received from rents and the sale of real estate a sum exceeding, by $43,577.94, the amount paid out by the trustees, either to creditors or as expenses of administration, which the referee, before whom the action was tried, found to be the principal sum due. It was contended on the part of Quinlan's co-trustees that Quinlan, as receiver of the savings institution, was in possession of its books, and, therefore, in a position to more conveniently pay and take subrogation from the depositors than his associate trustees, and that that portion of the work, devolved upon all of them by the trust deed, was intrusted to him, and that they should not be charged with any part of such principal sum, as it was wholly wasted by Quinlan without fault on their part.

The other trustees took part with Quinlan in most instances in selling the real estate, the proceeds of which were mainly deposited to the credit of all the trustees, and were subsequently withdrawn and turned over to Quinlan, who failed to apply the sum, with which the referee charged the trustees, in the manner required by the trust instrument. There was no evidence showing an attempt on the part of either of his co-trustees to ascertain whether Quinlan was faithfully distributing the money which came into his hands.

Judgment was awarded directing a conveyance to the plaintiff of all the real estate remaining unsold, and awarding to him, as against all of the trustees, a judgment for $53,420.58.

*Held,* that the co-trustees were properly charged with the amount received by all of the trustees and turned over to Quinlan.

The referee found that the plaintiff was, from the beginning of the trust, familiar with the action of the trustees, and knew that the money had been turned over to Quinlan by his co-trustees, for the purpose of making payments and taking subrogations, and that he had, in behalf of one of his clients, received a payment from and given a subrogation to Quinlan alone. A petition was served upon Roche, for whom the plaintiff was the attorney, in which it was asserted that the trustees were about to pay over the moneys to Quinlan, and asked that commissions be allowed upon such sum, after which, Roche and the plaintiff signed a consent that the trustees retain the sum of $6,000 for their commissions.

It was not found, nor did it appear from the evidence, that the trustees were misled by the silence of the plaintiff, or that the plaintiff knew that the trustees neither paid nor intended to pay any further attention to the matter after turning over the moneys to Quinlan.

*Held*, that assuming the trustee under the second trust deed might have so conducted himself as to estop him from recovering from those who by breach of their trust had permitted the moneys belonging to his *cestui que trusts* to be wasted, the facts did not exist upon which to predicate such estoppel.

A portion of the sum with which the referee charged the co-trustees of Quinlan, $17,040.09, never came into their hands. The evidence showed that two of the four checks representing such amount were made payable to the order of the attorney of the purchaser, and were by him indorsed directly to Quinlan. The other two were indorsed in blank, and Quinlan testified that they were received and deposited by him, and that his co-trustees never received any portion thereof. It did not appear that his co-trustees consented to the receipt of such moneys by Quinlan, or that they had knowledge of it at the time, or that they were in possession of any facts which should excite their suspicions touching either his integrity or responsibility.

It also appeared that a sum of $3,143.89, charged by the referee against all of the trustees, was paid to Quinlan individually under similar circumstances.

*Held*, that such moneys never having come into the possession of the co-trustees, they could not properly be charged with the amount thereof.

Shortly after the trustees had entered upon the execution of the trust, a meeting of all the trustees was held, at which one Walsh was unanimously chosen as their agent, to collect the rents and take charge of the real estate until it should be sold. This selection was suggested by one of the co-trustees of Quinlan, who subsequently informed Walsh of the action of the trustees. Thereafter Walsh acted as their agent and turned over the net rents to Quinlan.

*Held*, that all of the trustees were chargeable with having had joint possession of the rents while they were in Walsh's hands, and that his subsequent payment must be deemed to have been done by their direction.

APPEAL by the defendants, James Lynch and John E. Develin, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 10th day of February, 1883, upon the report of a referee.

The defendant John E. Develin died February 23, 1888, and the defendant James Lynch died August 5, 1888; and the action was revived and continued against the respective executors of said deceased defendants.

*Charles E. Miller* and *Henry H. Anderson*, for the appellants.

*James Thomson*, for the respondent.

PARKER, J.:

After the appointment of a receiver for the Guardian Savings Institution in November, 1871, one of its officers, Walter Roche, conveyed all his real estate to three persons in trust to sell, and with the proceeds pay the creditors of the Guardian Savings Institution the several accounts due them on the 1st day of July, 1872, after which to reconvey the remaining property to the trust maker.

It was further provided that payments should not be made to creditors except on the delivery of a subrogation by them to Walter Roche of their claims against the bank.

Jeremiah Quinlan, the receiver of the savings institution, and James Lynch and John E. Develin were named as trustees. All of them qualified and entered upon the discharge of the duties of such office.

Afterward "Roche" conveyed to "John T. McGowan," the original plaintiff in this suit, the reversion in the real estate described in the deed to Quinlan and others, in trust to pay his personal indebtedness to certain creditors named, and to reconvey the remaining property to Roche, after payment of the expenses of executing the trust.

In March, 1875, McGowan instituted this suit, which resulted in a judgment directing a conveyance to him by Quinlan and his co-trustees of such of the real estate as remained unsold, and awarding to the plaintiff, as against all the trustees, a judgment in the sum of $53,420.58.

There was actually received from rents and sale of real estate a sum exceeding that paid out by the trustees, either to creditors or as expenses of administration, $43,577.94, which the referee found to be the principal sum due.

But the trustees, Develin and Lynch, insisted on the trial, and their personal representatives still insist, that they ought not to be charged with that sum, or any part of it, because it was wholly wasted by their co-trustee Quinlan without fault on their part.

The trustee Quinlan, as the receiver of the savings institution, was in possession of the books of the institution, and, therefore, in a position to more conveniently pay and take subrogation from depositors than his associate trustees, and for such reason, doubtless, that portion of the work devolved upon all of them by the trust deed was intrusted to him.

The other trustees took part with Quinlan in most instances in selling the real estate, the proceeds of which were in the main deposited in a trust company to the credit of all the trustees. Subsequently they were withdrawn and turned over to Quinlan, who failed to apply the sum with which the referee charged the trustees, in the manner required by the trust instrument.

The general rule is, both in England and this country, that where trustees have once obtained joint possession of a trust fund, and thereafter one of them turns over the fund to his co-trustee, he will, in case of a misappropriation by his associate, be held responsible for it. (*Sadler* v. *Hobbs*, 2 Brown's Ch. 95; *Curtis* v. *Mason*, 12 L. J. [N. S.] 442; *Brumridge* v. *Brumridge*, 27 Bev. 5; *Adair* v. *Brimmer*, 74 N. Y. 539; *Earle* v. *Earle*, 93 id. 104; *Croft* v. *Williams*, 88 id. 384; *Bruen* v. *Gillette*, 115 id. 10.)

The reason for the rule is apparent, and has been often stated. As to the fund reduced to joint possession, all the trustees are in a situation to see to it that it is applied in the manner provided by the trust maker, and it is the duty of each to take care that it is so applied.

The trust maker having elected not to permit a distribution of the fund by one trustee, any attempt to thwart his wish by an arrangement between the trustees must be taken on their own responsibility. Not the *cestui que trust* but the trustees assume the burden which may result from their failure to perform the obligations of a trust because of a confidence which they and not the trust maker saw fit to repose in a single trustee.

The rule being founded upon a neglect of duty on the part of a co-trustee, to see that a proper application is made of the trust funds, it is urged that it should not be held applicable here where, as the appellants allege, there was no such neglect, their contention being that it was impossible to pay and take subrogation from six or seven hundred depositors without the presence of the books of the bank, which were necessarily in the possession of Trustee Quinlan in his official capacity as receiver.

If that were so there was nothing to prevent the associate trustees from being present at the bank, except their personal and business engagements, and the personal convenience and comfort of a trustee cannot be accepted as an excuse for a failure to perform a duty. If

it be not convenient for him to perform the obligations of the trust he must not assume them, but give way to another in a better situation to discharge them.

But there were other ways in which the payments could have been made, and subrogations taken, without the presence of all the trustees at the bank.

Every payment could have been made by means of a check bearing the signatures of all the trustees. It would likely have necessitated a second visit by the depositors, and occasioned more trouble on the part of the trustees, but it could have been done, and without great difficulty. Had it been the question would not now be presented whether the beneficiaries under the second trust deed or the estate of the solvent trustees shall bear the loss?

If Trustees Develin and Lynch had turned over the moneys in small amounts, as it was required in the payment of depositors, and had from time to time examined the subrogations for the purpose of ascertaining whether they represented the sums which Quinlan claimed to have paid to depositors, the amount which Quinlan could have misappropriated, if any, would have been small, but no such precaution was taken. Indeed, in all this large record there is not a suggestion of an attempt on the part of either Develin or Lynch to ascertain whether their associate was faithfully distributing the two hundred and forty odd thousand dollars which came into his hands.

No precautions whatever were taken by them to assure such an application of the funds by them turned over to Quinlan as the trust required. Undoubtedly it was because of their great confidence in the personal integrity of Quinlan, but that does not present a legal excuse.

It is further contended that the plaintiff is estopped from asserting that the trustees are guilty of a breach of trust, because, with knowledge that the trustees were paying over moneys to Quinlan for distribution among the creditors, he did not object. The facts found by the referee which have a bearing on that question were, in substance, plaintiff was from the beginning of the trust familiar with the action of the trustees, and knew that the money had been turned over to Quinlan by the other trustees for the purpose of making payments and taking subrogations; plaintiff, in behalf of one of his clients, received a payment from, and gave a subrogation

to, Quinlan alone; a petition was served upon Roche, for whom the the plaintiff was attorney, in which it was asserted that the trustees were about to pay over the moneys to Quinlan, and asked that commissions be allowed upon such sum, after which Roche and the plaintiff signed a consent that the trustees retain the sum of $6,000 for their commissions.

There is nothing in the facts found, or in the record, which tends to show that the trustees were in any manner misled by the silence of the plaintiff. It is not suggested that their action was in any wise influenced by the omission of the plaintiff to speak.

Nowhere is it asserted that Develin and Lynch, in that which they did, supposed that their action was understood and approved by the plaintiff. He was not consulted by the trustees about the matter at all, and so far as their conduct is concerned, it does not appear that they in the least desired to know whether he or Roche approved of their plan of selecting one of their number to distribute the funds.

It is not found, nor does it appear from the evidence, that the plaintiff knew that the trustees neither paid, nor intended to pay, any further attention to the matter, after turning over the moneys to Quinlan.

If he did know, as we shall assume that he did, because the fact is so found, that all of the money was turned over to Quinlan, it cannot be assumed, in the absence of any evidence whatever on the subject, that he also knew that when the money was so turned over, Develin and Lynch regarded their responsibility at an end, and had determined not to inquire further whether the money should be properly applied. On the contrary, for aught that the record discloses, plaintiff was justified in assuming that the trustees understood the personal risk undertaken when they paid over the money, and had accordingly taken suitable precaution to assure its proper disposition.

It is difficult to discover from these facts any foundation upon which to rest an estoppel, which would deprive the *cestuis que trust* under the last trust instrument from receiving the moneys which of right belonged to them.

Assuming that the trustee under the second trust deed might have so conducted himself as to estop him from recovering from

those, who by a breach of their trust had permitted the moneys belonging to his *cestuis que trust* to be wasted, the facts do not exist here upon which to predicate it. The cases cited by the appellant are not applicable to this situation.

In *Erie Co. Savings Bank* v. *Roop* (48 N. Y. 292), S. allowed R. to make certain payments under a mistaken belief as to the facts, by which S. derived an immediate and direct advantage over R., and it was held that S.'s silence under such circumstances was deceitful and fraudulent.

*Sherman* v. *Parish* (53 N. Y. 483) was a suit instituted against a passive trustee, based upon an alleged breach of trust in permitting the active co-trustee to invest a portion of the trust funds in other securities than those authorized by the trust instrument. It was found as a fact that the plaintiff fully assented and acquiesced in the exclusive control and management of the co-trustee, and especially with the disposition made of the fund which was the subject of the controversy, and that she did this with knowledge of all the important and material facts and circumstances. This was held to relieve the defendant from any personal liability to the plaintiff on account of the acts of his co-trustee.

In this case there is neither a finding, nor evidence upon which to base one, to the effect that the plaintiff assented to the exclusive control and management of Quinlan in the disposition of the funds turned over to him.

In *Butterfield* v. *Cowing* (112 N. Y. 486), the trustee omitted to follow the terms of the mortgage by which he had agreed to be bound, and thus became liable to respond to those suffering damage. Plaintiff was, however, denied relief, because, with full knowledge of the facts, he first instituted a suit to prevent the carrying out of the plan afterwards fully accomplished, and then withdrew his suit, uniting in a stipulation in which he formally withdrew all opposition to the scheme, and was given permission to unite with the other bondholders in the new organization, which he promised to do. He desired to obtain a benefit by withdrawing the suit and making the stipulation. His act, in some measure at least, induced the action of the trustee, of which he complained in his subsequent action, and his conduct was properly held to deny him the right of recovery against the defendant for a breach of trust.

A portion of the sum with which the trustees Develin and Lynch are charged by the referee, amounting to $17,040, never came into their hands. The learned referee based the refusal to so find upon the ground that it was paid to the counsel for the trustees. In this respect, we think, he was in error; while the deeds were prepared by their counsel, it does not appear that the payments aggregating such amount were made by or through him. On the contrary, the evidence seems to establish that such was not the fact.

Two of the four checks representing such amount were made payable to the order of the attorney of the purchaser, and by him indorsed directly to Quinlan. The other two were indorsed in blank, and Quinlan testifies that these checks were received and deposited by him, and that the other trustees never received any portion thereof. It does not appear that Develin and Lynch, or either of them, consented to the receipt of these moneys by Quinlan, and their deposit to his individual account, or that they had knowledge of it at the time. And it is not hinted that they were in possession of any facts which should have excited their suspicions, touching either the integrity or responsibility of Quinlan. These facts bring this case, so far as this item is concerned, within the rule asserted in *Wilmerding* v. *McKesson* (103 N. Y. 329), and *Bruen* v. *Gillet* (115 id. 10).

In the latter case the court said : " We have lately held that one executor (and I think the rule is the same with other trustees) is responsible for his own acts, and not for those of his associate ; and if the latter collect and misapply the money, the executor who has not received it is not liable for the waste. If he is merely passive and simply does not obstruct the collection by his associate, he is not liable for the latter's waste, if guilty of no negligence himself."

In *Wilmerding's* case the same general rule was laid down ; Judge Miller, speaking for the court, said : "Where the funds of the estate were lawfully received by one of the executors, or were originally in his hands, or properly paid to him in the due course of administration, and there is nothing to excite suspicion as to the integrity or responsibility of such trustee, or to create a belief that the funds have been improperly used, or invested in violation of the established rules applicable to such cases, or were unlawfully allowed to remain uninvested, there is no rule which charges the executor or

trustee who has not control of the fund, with the wrongful acts or misconduct of his associate."

It follows that the sum paid to Quinlan individually, with the interest thereon, which amounted to $3,143.89, should not have been included in the judgment.

The further point is made that Develin and Lynch are not chargeable with certain rents amounting to over $18,000.

Shortly after the trustees had entered upon the execution of the trust a meeting of all the trustees was held, at which one Walsh was unanimously chosen as their agent to collect the rents and take charge of the real estate until it should be sold. This selection was suggested by Mr. Develin, who subsequently informed Walsh of the action of the trustees. Thereafter Walsh acted as their agent and turned over the net rents to Quinlan.

Those facts support the conclusion of the referee, that all of the trustees are chargeable with having had joint possession of the rents while they were in Walsh's hands, and that his subsequent payment must be deemed to have been done by their direction.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event, unless the plaintiff, within twenty days, stipulate to deduct from the judgment the sum of $20,183.98, in which event the judgment must be modified accordingly, and, as so modified, affirmed, with costs of this appeal to the appellant.

O'BRIEN and FOLLETT, JJ., concurred.

Judgment modified as directed in opinion, and, as modified, affirmed, with costs of this appeal to the appellant.