## *In re* COZZENS' ESTATE.

## *In re* SMITH *et al.*

(*Surrogate's Court, Rensselaer County.*   July 20, 1891.)

1. TRUSTEES—MISCONDUCT—LIABILITY OF CO-TRUSTEES.

Three persons. A., H., and S., named in a will as executors and trustees, qualified as such, but A. did not take an active part in the management of the estate. H. and S. divided the assets of the estate between them, each collecting the income on the portion in his hands. The books of the estate were kept by H., to whom S. reported all receipts and disbursements made by him, (S.) The receipts and disbursements reported by S. were entered on the books by H., and from the books H. made periodical statements of the entire income of the estate to S. The income of the estate was applied by S. to the use of the beneficiary. *Held*, that A. and S. were not accountable for money of the estate appropriated by H. to his own use without their knowledge.

2. SAME—LOANS TO CO-TRUSTEE.

A trustee who permits his co-trustee to use funds of the estate, giving his note for the amount, with a railroad bond as collateral security, is accountable for the amount so used where the co-trustee becomes insolvent, and the bond pledged as collateral security is recovered by a third person, claiming the same adversely to the co-trustee.

Accounting of George B. Smith and others, as trustees of the estate of Gorton P. Cozzens, deceased. Decedent bequeathed his estate, after payment of debts and certain legacies, to George B. Smith, Jesse B. Anthony, and Theodore E. Haslehurst, who were also executors of the will, in trust, to pay the income to testator's son, William G. Cozzens, for life, and after his death to distribute the fund among the children of said William G. Cozzens. All the persons named as executors and trustees qualified, but Anthony did not take an active part in the management of the estate. Haslehurst and Smith divided the assets of the estate between them, and received the income. Haslehurst kept the books of the estate, entering thereon all the receipts and disbursements made by himself, as well as those reported to him by Smith, and he made periodical statements from such books to Smith. Haslehurst died insolvent, and on the accounting by the survivors it appeared that Haslehurst had appropriated to his own use the sum of $2,060.67. The surviving trustees ask to be credited with such amount, on the ground that the misappropriation was without their knowledge. They also seek to be credited with the sum of $900, appropriated by Haslehurst to his own use, and $500 paid for expenses of litigating a claim made by the Troy & Albia Horse-Railroad Company to a bond pledged by Haslehurst as collateral security for the $900 used by him.

*Merritt & Ryan,* for the trustees.   *Seymour Van Santvoord,* guardian *ad litem,* for Annie S. Cozzens.

LANSING, S.   We shall consider, first, the propriety of the allowance of the credit of the sum of $2,060.67 upon this accounting. It will be necessary briefly to consider the facts connected with the alleged loss of the funds, in order to make a proper application of the law. But little, if anything, is known in regard to the actual facts connected with the loss, save what appears in the books kept by the deceased trustee, Haslehurst, which were not examined until after his death. From those books it appears that a mortgage upon property in the city of Troy was given by one Golden, for the sum of $2,000, September 10, 1884; that it was paid on the 10th day of September, 1886, in full. The mortgage was satisfied by Haslehurst alone, and the money never came into the hands of the trustees Smith or Anthony, and they had no knowledge of its payment at the time it was paid. On the books kept by Haslehurst the amount due on the mortgage, after it was received, was figured as cash in the hands of Cipperly, Cole & Haslehurst, bankers and brokers, at Troy, N. Y., of which firm Haslehurst was a member. Haslehurst paid interest thereon December 1, 1886, at 4 per cent., and subsequently en-

tered in his book, January 1, 1887, that he had a balance on hand belonging to the estate of $3,060, including the $2,000 above stated. This amount he entered on the books as being on special deposit with Cipperly, Cole & Haslehurst, ($3,000,) and credited interest thereon for four months at 4 per cent. On November 1, 1887, Haslehurst changes again the entry on the book, by crediting interest from Cipperly, Cole & Haslehurst on $1,000 at 4 per cent., and on $2,000 for six months at 5 per cent. It appears from the books that this $2,000 was simply Haslehurst's individual note, which never has been found, and probably was never made. The proceeds of the Golden mortgage never, so far as it appears, went to the firm of Cipperly, Cole & Haslehurst, but were used by Haslehurst individually, which amount constitutes a part of the shortage of this estate. Haslehurst credits himself with interest on this note up to the last interest day preceding his death. Anthony was never consulted about the Golden mortgage, and never knew it was paid, or even of its existence, until he made an examination of the books after the death of Haslehurst. Smith knew of the existence of the Golden mortgage, but had no knowledge, until after the death of Haslehurst, that it had been paid. The loan appears to have been made by Haslehurst alone. Smith only knew of it as interest was brought to him purporting to be interest received from the Golden mortgage. Under these facts the question arises, are Anthony and Smith, or either of them, liable for the loss which has occurred to the trust fund? In regard to Anthony, we think there is no serious question as to his liability. He appears to have been a consulting trustee only. He had no charge of the funds, no knowledge of the investments; indeed there was a tacit understanding, as he alleges, between himself and the remaining trustees, that they would assume the active care and management of the estate. In regard to Smith, the case is somewhat different. He knew of the investment, and had active charge, in connection with Haslehurst, of the trust, and held a large portion of the securities in his own hand, and collected the interest and income from the securities and disbursed the income from the entire estate to and for the benefit of the beneficiary. He was a butcher, actively engaged in his business, unaccustomed to keep books of account save a simple blotter, and relied upon Haslehurst as a skilled accountant and one peculiarly qualified for the purpose of keeping the accounts and transactions of the estate. Doubtless he had access to the books of the estate kept by Haslehurst, but he did not in fact examine them. It inferentially appears that he would have known but little of them had he examined them, and really the only question, it seems to me, so far as this item is concerned, is: Was he and his co-trustee, or either of them, guilty of negligence in not examining the books of the estate kept by Haslehurst, or causing them to be examined, to learn, as it has been learned since Haslehurst's death, and might have been before, that Haslehurst was using the funds of the estate in his own business or the business of the concern of which he was a member?

The general rule in regard to the liability of executors and trustees is well settled. Co-executors and trustees may act either separately or in conjunction. They are jointly liable for joint acts, and each is separately liable for his separate acts and defaults. *Bruen* v. *Gillet*, 115 N. Y. 10, 21 N. E. Rep. 676; *Croft* v. *Williams*, 88 N. Y. 384; *Adair* v. *Brimmer*, 74 N. Y. 539. In *Croft* v. *Williams*, Judge FINCH, speaking for the court, remarks that "the general rule is that an executor is responsible for his own acts, and not for those of his associates; so that, if he receives and misapplies the money, or does any act by which it gets into the hands of the other, who diverts or wastes it, and but for which act the latter would not have had it, a liability to make good the loss results. * * * If an executor is merely passive, and simply does not obstruct the collection or receipt of assets, he is not liable for the latter's waste, but where he knows and assents to such misapplication, or negligently suffers his co-executor to receive and waste the

estate when he has the means of preventing it by proper care, he becomes liable for the resulting loss. \* \* \* Mere assent to the executor's receipt of the funds is not enough. \* \* \* Ordinarily, in the collection of assets the rights of each are alike, and one has not control or supremacy over the other. One, therefore, may sit passive and see the other receive funds of the estate, and, making no objections, be deemed to assent, but that does not make him responsible for what has been received. He must in some manner know and assent to the misapplication; he must be a consenting party to the waste, or neglect some duty consequent upon his knowledge of the misapplication intended or in progress. A wrong done or duty omitted must lie at the foundation of his liability." See, also, *Wilmerding* v. *McKesson*, 103 N. Y. 329, 8 N. E. Rep. 665; *Ormiston* v. *Olcott*, 84 N. Y. 339. In applying the rule above laid down to the facts relating to this item, it seems to me that Smith, whose liability is more especially insisted upon, is not guilty of such negligence as renders him responsible for this loss. He certainly had no knowledge of the intended misappropriation, or of its progress, and had no reason to suspect Mr. Haslehurst's integrity, either from his standing in the community or from his own dealings with him. Neither does the rule that the knowledge of one co-executor or trustee must be imputed to the other, laid down in the case of *Railroad Co.* v. *Smith*, 11 N. Y. Supp. 261, apply here; otherwise in every case the actual non-consenting and innocent co-executor would always be bound for the wrongful acts of a recusant executor, because he would always, under that rule, have implied knowledge or notice of his co-executor's defaults intended or in progress.

The serious question is, was knowledge of the facts embraced in the books of the estate kept by Haslehurt legally imputable to Smith and Anthony, or either of them? We are not disposed to adopt so stringent a rule. There was no suspicion of wrong-doing, nothing to put the accounting executors on inquiry; and, under such circumstances, it can hardly be said that they were guilty of neglect in not looking into the books kept by the co-executor, or inquiring into the condition of the portion of the estate controlled by him, when they had every reason to believe that the duties which had been assumed by their co-executor were being properly performed. We do not think the case of *Earle* v. *Earle*, 93 N. Y. 104, which holds that executors or administrators who permit a third person to manage and control the estate, and adopt him as their agent, are responsible for his conduct, and are liable for losses incurred by his improper and negligent management of the affairs of the estate, applies here. In the case at bar Haslehurst was but performing his own duties as executor in what he did in keeping the books, and the fact that the remaining executors or trustees trusted to his honesty in keeping them correctly, and did not inquire into every transaction which was or might have been on his books, does not, as a matter of law or fact, require the conclusion that they were guilty of negligence; and we shall hold, for the purpose of this accounting, that the trustees should have credit for the sum of $2,060.67, lost through the misconduct of their associate trustee without their fault.

The remaining question, as to the credit claimed by the executors for the loss of $900 and the costs of a suit respecting the same, presents a far different question. Said $900 was a portion of the funds of the estate which had been received by the said Haslehurst, and also misappropriated by him. The facts in regard to that item are, in short, as follows: Haslehurst had received the money which belonged to the estate; and, to use the language of Mr. Smith, trustee, in his testimony, Haslehurst said: "'I (Haslehurst) will take that money, and give you my note and a Troy & Albia bond as collateral; that is, $900.' That is the only transaction he consulted me about. He said: 'I'll give you my note, and attach a bond of the Troy & Albia Horse-Railroad to it as collateral security.'" It appeared after the death of Haslehurst that the

$1,000 bond attached to the note as collateral had been wrongfully taken by Haslehurst from its owner when he transferred the same to Smith. The note is unpaid by reason of Haslehurst's insolvency. An action was subsequently brought by the Troy & Albia Horse-Railroad Company against the present trustees to recover the bond, and recovery was had, the court holding that the remaining executors or trustees were not *bona fide* holders of the bond, and that the knowledge of Haslehurst was imputable to them. *Railroad Co. v. Smith, supra.*

Credit upon account of this loss is claimed upon the ground that Haslehurst, at the time of the acceptance of this note by Smith, his co-executor, had the money in his possession, and had the right to its control and use, and that Smith did nothing that caused the loss; and, further, that Smith neither put it in Haslehurst's possession, nor had he the power to deprive him of its possession or control; and that at the time of the alleged loan he held it as trustee, and was entitled to its control, without consent of his co-trustee; and beyond that, that the trustee Smith acted in entire good faith in making the loan and accepting the bond of the Troy & Albia Horse Railroad Company, which, it is alleged, was ample security for the loan; and except for the defect in title of the bond of which Smith, it is conceded, had in fact no knowledge, the loan would have been amply secured. We are of the opinion that this position is unsound. True, Haslehurst had the funds in his possession, but, for the occasion, he laid aside his character of co-executor or trustee, and went to his co-executor as a borrower. He said in substance: "I need a loan of money for a brief period. I will give you my note and a $1,000 bond of the Troy & Albia H. R. R. Co. as collateral security for the loan." In my judgment the case would not be different had Haslehurst applied in behalf of a third party engaged in like business to his own, and Smith had consented, under the same circumstances, to have made the loan, and that Haslehurst might turn over the money to him upon his furnishing his note and the bond, or any other of like character as collateral. Such a transaction would be utterly indefensible in my opinion; and the court of appeals say, in the case of *Deobold* v. *Oppermann,* 111 N. Y. 538, 19 N. E. Rep. 94, per RUGER, C. J.: The employment and use of trust fund by the trustee in his trade or business, or as loans to persons engaged in such business, or the prosecution of commercial or manufacturing enterprises, or speculative adventures, have been uniformly considered as illegal, and as constituting a *devastavit* of the estate, * * * authorizing the removal of the trustee. See, also, *Wilmerding* v. *McKesson, supra.* The rule above cited condemns the knowing employment of a trust fund by the trustee in business enterprises without special consideration of the character or quality of the security taken. In this case it was a loan upon personal security,—a promissory note. Such a loan requires no citation of authorities for its condemnation. The fact that a railroad bond was given as collateral we do not think changes the character of the transaction. Even if a railroad bond might, under some circumstances, be a justifiable investment for a trust fund, it does not belong to the class of which the courts approve, and the burden of showing the value and sufficiency of the security is upon the trustee before the question of its acceptance is entitled to the slightest consideration. The bond of a horse-railroad company, secured by a mortgage upon its tracks, is not such a real-estate security as will authorize trustees to invest trust funds thereon. *Judd* v. *Warner,* 2 Dem. Sur 104; *King* v. *Talbot,* 40 N. Y. 90. But we prefer to place our disallowance of the credit upon the ground that the trustee Smith distinctly assented to the making of a temporary loan, presumptively for business purposes, which brings the case within the rule that a trustee is liable for the defaults of his co-trustee where he is a consenting party to the waste, or neglects some duty consequent upon his knowledge of misapplication intended or in progress. *Croft* v. *Williams, supra.* See, also, *Wilmerding* v. *McKesson, supra.* It plainly appears that the

trustee Smith knew and understood that this loan was made for a temporary purpose to a person engaged in business, and was in fact for business purposes. If he might consent to the loan of $1,000 to Haslehurst, secured by his note and collaterals, of whatever character they were, he might have loaned him the entire estate, and placed the trust fund at hazard, not only of the business of Haslehurst, but also of various other enterprises represented by the collaterals. Such investment, in the language of the court cited, undoubtedly constituted a *devastavit* that authorizes the prompt removal of the trustee guilty of the wrongful act. But it is claimed that, as Smith did not actually have the fund in his possession, he did not give Haslehurst control of the fund, and so was not guilty of any wrongful act. But he had notice of and consented and participated in the wrongful misappropriation of this fund by Haslehurst, and under all the authorities he would be guilty if he took no steps with such knowledge to prevent the consummation of the intended wrongful act. It is no answer to say that, if he did not consent, Haslehurst would have probably taken the funds without his consent. It is sufficient to say that he did a wrongful act in consenting to an improper investment of the trust fund, and, *non constat*, had he refused his consent, and insisted upon a proper investment of the fund, that it would not have been made. At any rate, his refusal would have gone far towards his exoneration, although under the law as it now stands he would have been authorized to apply to the court for a direction as to the disposition of the fund upon his refusal to accede to his request. *Wood* v. *Brown*, 34 N. Y. 337; Code Civil Proc. § 2602. The examination of this account has satisfied me that this fund has been managed with great laxity and disregard of the law with respect to its investment. I find from the account that loans have been made not only to Haslehurst, with the consent of Smith, but Smith has taken loans himself,—whether with Haslehurst's consent or not does not appear,—until at the date of his account, January 1, 1890, said loans to Smith have increased to $6,000. In addition, as we understand the account, the trustee holds a note of George B. Smith & Son for $1,500. It is stated in the account that the $6,000 loan has collateral security. Such investment of the fund is unlawful, and utterly without excuse, and demands the severest condemnation; and I direct that the said trustee (Smith) immediately invest said fund in lawful securities, and make a report to me of the investment so made within five days; in default thereof, show cause why he should not be removed from his office. Let a decree be drawn in pursuance of this opinion.