In re HALSTED. (Supreme Court, Appellate Division, Second Department. December 8, 1905.) In the matter of the final and judicial settlement of the account of John F. Halsted, as surviving trustee, etc., of Charles J. Buckingham, deceased. George H. Yeaman (George C. Kobbe, Charles F. Cossum, and Ernest A. Bigelow, on the brief), for appellants. Frank B. Lown (Allison Butts, on the brief), for respondent.

PER CURIAM. Decree of the Surrogate's Court of Dutchess county affirmed, on the opinion of the surrogate (89 N. Y. Supp. 806).

RICH, J., reads for reversal, with whom BARTLETT, J., concurs.

RICH, J. (dissenting). By the provisions of his will, admitted to probate in Dutchess county October 15, 1889, Charles J. Buckingham gave, devised, and bequeathed to his executors, John F. Halsted (the respondent) and Robert F. Wilkinson, his entire estate, in trust to invest and reinvest the same, collect and pay the income arising from the one-half part thereof to his daughter, Martha W. B. Wood, during her life, and the principal upon her death to her child, children, or lineal descendants, if any survived her, and, if not, to her brother Charles Henry Buckingham—and to collect and pay the income arising from the remaining one-half to the testator's said son, Charles Henry Buckingham, during his life, and the principal upon his death to his child, children, or lineal descendants surviving him, if any, and, if not, to his said sister, Martha W. B. Wood. The executors duly qualified. Letters testamentary were issued to them October 15, 1889, and they entered upon the discharge of their duties as executors and trustees, and continued to act (together) as such until about the 29th day of June, 1903, when Wilkinson died, and thereafter Halsted continued to act as the survivor until July 22, 1904, when the decree of the Surrogate's Court of Dutchess county, from which this appeal is taken, permitted him to resign and discharged him from liability or accountability as a trustee

under said will. There was an accounting by the executors in 1890, and by the trustees in 1892 and 1898. Both Halsted and Wilkinson united in the petitions and participated in the proceedings, and each received and retained his commissions. The 1898 accounting resulted in a decree charging the trustees, as to the Wood trust, with the securities, real estate, and cash on hand of the value of $61,946.39, all of which was principal (of this amount $19,825 was represented by real estate in Kansas City, Mo., on the sale of which $6,871.89 was lost, for which no claim is made in this proceeding) and, as to the Buckingham trust, the securities, real estate, and cash on hand of the value of $67,580.23 of principal (of this amount $12,825 was represented by real estate in Missouri, on the sale of which a loss was sustained of $4,655.03, for which no claim is made in this proceeding). The decree was entered December 21, 1898, and a few days later Halsted and Wilkinson went to the Farmers' & Manufacturers' National Bank in Poughkeepsie and examined, had in their possession, and checked up all the securities with which the decree of December 21st charged the trustees, and found them all there intact. After such examination they were restored to the vault of the bank in a safety deposit box by the trustees, each of whom had and retained a key to the box. Halsted never examined the contents of this box again, never made any effort to ascertain by personal inspection whether the securities belonging to the estate were actually in the box to which he had a key, and made no inquiries of the bank officers regarding the securities or their location until after Wilkinson's death, when it was ascertained that Wilkinson had surrendered the box and removed the securities to his private and personal box in the same bank, and that of the assets of the two trusts, amounting to more than $120,000, there remained less than $6,000 indisputably belonging to the trust funds. Some of the missing securities had been pledged by Wilkinson for his private debts, and were, after his death, sold by the pledgees. Some had been sold and the proceeds appropriated by him. Others were missing, no information as to their whereabouts or the application of their proceeds being obtainable. In September and October, 1903, proceedings for a compulsory accounting were instituted against Halsted as surviving trustee by the beneficiaries. Subsequently he filed a petition for a voluntary accounting and permission to resign his trust, and these proceedings were consolidated. Upon the hearing the surrogate held Halsted liable only for the trust funds actually in his possession, amounting (in both trusts) to $5,876.24, permitted him to resign, appointed the Poughkeepsie Trust Company trustee in his place and stead, and the decree appealed from was entered accordingly. It discharged Halsted from further or other liability or accountability as trustee, on compliance with its provisions as to payments, and turning over the books and papers connected with his office to his successor.

The record presents no disputed questions of fact. There is no evidence or claim that the trustees were guilty of negligence in the management of the trust, so far as the sale of the securities and lands composing it and their conversion into money or other securities is concerned, or that they neglected to sell at proper times, or sold for less than market values. There is no claim or evidence that Halsted personally appropriated the avails of any of the missing securities, or was guilty of any personal dishonesty or wrongdoing in the matter, or that he had actual knowledge of the wrongful acts of his co-trustee, or consented to his taking or misapplication of any part of the trust estate. The appellants insist that he ought to be held liable for the loss to the estate resulting from its conversion and misapplication by his co-trustee: First, that, irrespective of negligence, the entire estate having been in the joint possession and under the joint control of himself and Wilkinson, it was within his power, was his duty, and he was bound to see that it was applied in accordance with the directions of the trust, failing in which he is liable and must account to the beneficiaries for its entire value; and, second, that he was so grossly negligent in the discharge of some of his duties that he must be held responsible for the peculations of his co-trustee, who, by acts of omission and commission on the part of Halsted, it is claimed, was enabled to obtain the sole possession and control of the securities, which placed it within his power to convert them to his own use, which the exercise of ordinary vigilance and diligence by Halsted would have prevented and made impossible. To establish the facts involved in these propositions the appellants rely upon the evidence of Halsted himself. On December 28th, if not before, the securities representing the entire trust estate were in the joint possession and joint control of Halsted and Wilkinson. On that day, if not before, Halsted actually had in his possession and hands, and from his list, which was taken from the decree entered on the accounting on December 21st, compared and checked off all the securities belonging to the estate with which the trustees were charged, after which he assisted in replacing them in boxes, and himself carried and placed one of such boxes in the safety deposit box to which he had, and since 1892 had been in possession of, a key. The securities composing the trust estate were then intact, all present and all restored to the boxes. In his petition in this proceeding Halsted alleges that in December, 1898, "the said securities composing the said trust funds were in a box in a safe deposit vault in the city of Poughkeepsie under the control of both your petitioner and the said Wilkinson and were so left by your petitioner." I entertain no doubt that these facts establish both joint possession and joint control, either of which is sufficient under the well-settled law of this state to bring the surviving trustee under the rule established in Bruen v. Gillet, 115 N. Y. 10, 14, 21 N. E. 676, 4 L. R. A. 529, 12 Am. St. Rep. 764, that where the property, the fund, the assets of the estate have once come into the joint control or the joint possession of the trustees, it is the duty of each trustee to see to it that the fund does not go out from under his control and possession, excepting as it is applied to the fulfillment of the trust; it being conclusively established that Halsted was not a mere passive trustee, but an exceedingly active and vigilant one as to many

matters connected with the trust estate. Outside of the peculation of his co-trustee, he seems to have taken part in nearly all of the details of the administration of the trusts. Had he exercised the same vigilance as to the whereabouts of the securities, the manner in which they were taken, and their registration and record that he exercised as to other details of the management of the estate, it is reasonable to presume that the trust estate would be intact today. The entire estate having been in the joint possession, or at least in the joint control, of Halsted and Wilkinson, as early as December, 1898, each became responsible for its proper management, disbursement, care, and application. The respondent cannot escape this responsibility by snowing that he delivered the securities and other assets of the estate to Wilkinson, by whom they were misappropriated without his knowledge. This would account for them in no other manner than by such delivery, and he thereby establishes no right to be credited with them in his account. Croft v. Williams, 88 N. Y. 384. Nor can he avoid his duty, and the consequences of its omission, by permitting the trust property to come under the sole control of his co-trustee. Matter of Hunt, 88 App. Div. 52, 84 N. Y. Supp. 790. I do not overlook the contention of the learned counsel for the respondent that his co-trustee was a lawyer of repute, extended practice, and enjoyed the confidence of the community in which he resided, who had enjoyed the confidence of the testator in his lifetime, who had been his attorney, and in whose possession Halsted found all of the property composing the trust estate, and that he was the attorney in fact of one or both of the beneficiaries, with other similar facts proven and urged as justifying the manner and method adopted by Halsted in dealing with his co-trustee in matters connected with the estate and its administration, and that it should be held sufficient to relieve him from liability. With this contention I do not concur. I do not know how active or vigilant a supervision the testator may have exercised with reference to the securities owned by him while in the hands of Wilkinson. He had, in his lifetime, told Halsted that he was worried about his securities, which were then in Wilkinson's possession. Halsted is first named in his will. There is a manifest reason why the trust maker elected not to place the management, control, and distribution of his estate in the hands of one trustee; and, the estate having been reduced to joint possession and coming under the joint control and custody of both trustees appointed by him, each was in a position, and had the power, and it was his duty, to see that the estate was applied in the manner provided and directed by the testator. Halsted cannot be permitted to avoid the duty and liability placed upon him by any arrangement or course of conduct between himself and Wilkinson which would thwart the testator's wishes, and, such course having been adopted and pursued, he, and not the beneficiaries, must be held to have assumed the burden resulting from his failure to perform the obligations of the trust, because of the confidence which he, and not the trust maker, saw fit to repose in his co-trustee.

Again, the respondent was grossly negligent in the manner in which he discharged his duty as a trustee, whereby it was made possible for Wilkinson to convert and misappropriate the securities of the estate. This might have been avoided by the exercise of that reasonable diligence and vigilance on the part of Halsted which as matter of law he was bound to exercise. It appears from his evidence that he was familiar with the duties devolving on trustees, was an executor and trustee under other wills, and able to give attention to business affairs. At all times after December, 1898, it was within his power to have ascertained the actual condition of the estate, and the location and whereabouts of the securities. Possession of the key to the safety box containing the securities, with the right to use it, gave him the means of ascertaining their condition and presence down to the time when Wilkinson assumed sole control of the securities by placing them in his private box. Halsted did not know that this had been done until after Wilkinson's death, although he might have ascertained the fact, had he made any attempt to examine the securities, or any inquiries of the officers of the bank concerning them. He had consented in 1892 that Wilkinson should change the place of their deposit from the Merchants' Bank to the Farmers' & Manufacturers' Bank for his better accommodation. Immediately upon the change being made he had been furnished with the key to the box containing them. He was informed by the officials of the latter bank that his name was entered on their books, so that he might have personal access at any and all times to the box containing the securities, and he understood that personally and in the absence of his co-trustee he had that right. Although he was frequently in Poughkeepsie, where the securities were kept or supposed to be kept, and had a record of all the securities belonging to the estate, including those purchased after 1898, he never attempted to examine them, never verified their actual existence or possession from December 28, 1898, until after Wilkinson's death in June, 1903. He accepted the statements of Wilkinson in place of the knowledge that it was his duty to acquire by actual investigation, and such statements were the only evidence he had of the facts, though he had the means at his command to verify their truthfulness. All of the securities in the shape of bonds acquired by the trust estate were purchased by Halsted, and either personally handed to Wilkinson, or delivered to the latter upon Halsted's order by the broker from whom he purchased them. Nothing is shown that would have prevented the respondent from attending at the bank from time to time and using the means at his command in ascertaining whether the securities in the joint possession and control of himself and Wilkinson were in the box, unless it was his personal and business engagements and the fact that he did not reside in Poughkeepsie. The personal convenience and comfort of a trustee cannot be accepted as a legal excuse for failure to perform his duty. The respondent made no effort to have his name included in the mortgages or assignments of mortgages to the estate. He made no attempt to find out by personal inspection how or to whom such mortgages and assignments were

executed, or to have any of the mortgages or assignments appear of record in his name as trustee. The rule governing the liability of trustees in such cases has been clearly stated in the case of Purdy v. Lynch, 72 Hun, 272, 276, 25 N. Y. Supp. 585, 586, as follows: "The general rule is, both in England and this country, that where trustees have once obtained joint possession of a trust fund, and thereafter one of them turns over the fund to his co-trustee, he will, in case of a misappropriation by his associate, be held responsible for it. Sadler v. Hobbs, 2 Brown's Ch. 95; Curtis v. Mason, 12 L. J. N. S. 442; Brumridge v. Brumridge, 27 Beav. 5; Adair v. Brimmer, 74 N. Y. 539; Earle v. Earle, 93 N. Y. 104; Croft v. Williams, 88 N. Y. 384; Bruen v. Gillet, 115 N. Y. 10, 21 N. E. 676, 4 L. R. A. 529, 12 Am. St. Rep. 764. The reason for the rule is apparent, and has been often stated. As to the fund reduced to joint possession, all the trustees are in a situation to see to it that it is applied in the manner provided by the trust maker, and it is the duty of each to take care that it is so applied. The trust maker having elected not to permit a distribution of the fund by one trustee, any attempt to thwart his wish by an arrangement between the trustees must be taken on their own responsibility. Not the cestui que trust, but the trustees, assume the burden which may result from their failure to perform the obligations of a trust because of a confidence which they and not the trust maker saw fit to repose in a single trustee." This rule was approved in the same case upon appeal. 145 N. Y. 462, 40 N. E. 232. I do not regard the decision of the Court of Appeals, however, as decisive of the question involved here. The "unusual and most exceptional facts" in that case, which, in the language of the court, "take it out of the ordinary rules for the conduct of trustees," do not exist in this case. Trustees should understand that in assuming responsibility as such they do not enter upon merely formal obligations. One who creates a trust, either by will or deed, has the right to understand that the trustee, in accepting it, while not bound to the greatest possible vigilance in the discharge of his duties, is yet bound to give such care and attention to their performance as intelligent men, acting in like circumstances, would give to their own affairs. A careful consideration of the evidence before the surrogate leads me to the conclusion that the respondent ought to have been charged, as surviving trustee, in the Wood trust, with principal as per decree of December, 1898, $55,074.50, and increased value of securities, $994.26, and in the Buckingham trust, with principal as per decree of December, 1898, $62,925.20, and increased value of securities, $494, together with unpaid interest on both funds to date of accounting. I think the decree of the Surrogate's Court should be reversed, and the proceeding remitted to the Surrogate's Court of Dutchess county.

BARTLETT, J., concurs.