AMERICAN BONDING CO. OF BALTIMORE v. RICHARDSON et al.

(Circuit Court of Appeals, Sixth Circuit.   June 30, 1914.)

No. 2441.

**1. Trusts (§ 240*)—Cotrustee—Liability.**

A trustee in general is responsible only for his own acts or defaults, and, except for his own fraud or negligence, is not liable for the trust property which has been in the exclusive possession and under the sole control of a cotrustee.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 347; Dec. Dig. § 240.*]

**2. Trusts (§ 179*)—Cotrustee—Care Required.**

A trustee's obligation to his trust is satisfied by the exercise of the same degree of diligence that a man of ordinary prudence would be expected to exercise in the care of his own property under the same circumstances.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 233; Dec. Dig. § 179.*]

**3. Trusts (§ 262*)—Cotrustees—Separation of Property—Fraud of Single Trustee—Liability of Cotrustee.**

Testator died leaving a large estate invested in Ohio and Indiana, which he devised to trustees, one located in each state.   Both had been his close friends and advisors during his lifetime, and had actively assisted him in his investments in their respective localities.   Litigation having been instituted in Indiana to recover a large amount of back taxes on property, and the Indiana trustee having been enjoined from removing any of the assets in his possession from the state, the trustees were advised by the Ohio probate court administering the trust to divide the estate into two parts each taking charge of assets in his own state.   This was done, and thereafter separate bonds were executed by the trustees and separate accounts made and approved; each giving to the other power of attorney authorizing separate action with reference to the property held by each. The Indiana trustee was a man of high standing in his locality, made prompt and full accounts, and there was no evidence of defalcation until after his death, when it was found that he was a defaulter to the trust in a large sum.   *Held*, that neither the Ohio trustee nor his successor were negligent in failing to investigate the Indiana property in the hands of the defaulting trustee from time to time, so as to render them liable for the defalcation to the defaulter's surety.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 372; Dec. Dig. § 262.*]

**4. Trusts (§ 387*)—Trustees—Sureties—Liability—Interest.**

On the death of a cotrustee in Indiana an inventory of the property in his hands was filed in February, 1909, and showed a defalcation.   His surety, instead of availing itself of the tendered assistance and co-operation of the Ohio trustee, commenced suit to compel the latter to hold it harmless from the payment of any sum whatever, the bill being filed in May, 1909, and a decree denying such relief and granting a recovery on the bond was not obtained until July 24, 1912.   *Held*, that the court properly charged the surety with interest on the penalty of the bond from the date of the filing of its bill, instead of the date of the decree.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 626–632; Dec. Dig. § 387.*]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit by the American Bonding Company of Baltimore against Charles C. Richardson and another. Judgment for defendants, and complainant appeals. Affirmed.

James Buck and the defendant, Richardson, were trustees under the will of Job M. Nash, deceased. James Buck misappropriated and embezzled upwards of $50,000 of the trust funds. The American Bonding Company of Baltimore (complainant) was the surety on Buck's bond in the probate court of Hamilton county, Ohio, in the penal sum of $50,000. The defendant Morgan is the successor of Buck. In this suit, complainant seeks to have the defendant Richardson adjudged liable for the defalcation of Buck, his cotrustee. The cause was referred to a special master to take testimony and to report therefrom his findings of fact and conclusions of law. The master's findings of fact, somewhat condensed and abbreviated, are as follows:

On August 1, 1893, the last will and testament of Job M. Nash, deceased, was duly admitted to probate in and by the probate court of Hamilton county, Ohio. Among other bequests contained in the will was one of $268,000 to James Buck of Lafayette, Ind., and William Augustus Goodman, of Cincinnati, Ohio, and to their survivors or successors, in trust, to be invested by them in good productive personal property, or secured by first mortgage upon good productive real estate, and the net income thereof to be paid semiannually by them, or their survivors or successors, to certain designated beneficiaries. Letters of trusteeship were issued without bond; none being required by the will. The trustees duly qualified and entered upon the discharge of their duties, and, on the 1st day of January, 1894, received the trust funds and securities, amounting to $268,000. The trust funds were already invested in ground rents in the city of Cincinnati to the amount of $141,000, and in mortgage loans in three counties in Indiana to the amount of $127,000. Mr. Buck had been a resident of the city of Lafayette for many years, and had acted as the business agent of Mr. Nash in making investments in that vicinity. Mr. Goodman had rendered like services to Mr. Nash in and near the city of Cincinnati. Mr. Buck took possession of the trust securities in Indiana, and Mr. Goodman took possession of those in Ohio. They filed three joint semiannual accounts, which were duly approved and allowed by the probate court. Thereafter, semiannually, each trustee filed his own separate account and reported his own separate doings, including receipts, investments, compensation, and disbursements, with relation to the properties of the trust under his own separate control and management.

The trust funds and properties were divided and separate accounts were filed under the advice of counsel and of the probate court. This advice was given and followed so as to prevent the whole trust estate being drawn into certain tax proceedings which were being prosecuted against the estate of Job M. Nash by the tax authorities of the city of Lafayette and the county of Tippecanoe, Ind., under assessments made for omitted taxes claimed to be unpaid and delinquent for 13 years, and amounting to upwards of $200,000. In January, 1897, suit for these taxes was commenced against Buck, as trustee, and he was enjoined from removing from the county of Tippecanoe the trust securities and property in his hands. A judgment in the lower court was subsequently obtained against him and affirmed by the Supreme Court of the state of Indiana. In January, 1905, Mr. Buck took an appeal to the Supreme Court of the United States where, on the 27th day of May, 1907, the judgment of the Supreme Court of Indiana was reversed. Buck v. Beach, 206 U. S. 392, 27 Sup. Ct. 712, 51 L. Ed. 1106, 11 Ann. Cas. 732. During this period, the several successive judges of Hamilton county probate court were fully informed of these tax proceedings. They advised Trustee Goodman to stay out of the state of Indiana so as to avoid the jurisdiction of its courts and to keep the trust funds in his separate control from being drawn into the litigation and thereby subjected to the tax claims made against the Nash estate by the Indiana taxing authorities. From and after the year 1896, the probate court, in the exercise of its jurisdiction of the trust, authorized the separate and exclusive control, dominion, and management by Mr. Buck of the part of the trust property reported by him as being in his separate possession in Indiana, and the separate and exclusive control, dominion, and

management by Mr. Goodman of the part of the trust property reported by him as being in his exclusive possession in the city of Cincinnati. From January, 1897, to March, 1904, the trustees, Goodman and Buck, each made detailed semiannual reports to the probate court without regard or reference to the course taken by the other, either as to the form of the report or the time of filing it. The accounts of each trustee, contained in such reports, were each independently allowed and approved by the probate court. The trust assets reported by Mr. Goodman in each of his separate accounts amounted to $141,000, and the trust assets reported by Mr. Buck in each of his separate accounts amounted to $127,000. The beneficiaries were fully informed of the separation and division of the trust funds and securities.

On the 29th day of March, 1904, the probate court was informed of the death of Mr. Goodman, and appointed the defendant Charles C. Richardson as his successor. In the application for the appointment of Mr. Richardson, the trust assets which were to come into his possession were represented to consist of ground rents and real property in the city of Cincinnati of the estimated value of $141,000. Each of the trustees, Buck and Richardson, presented and filed a separate bond in the penal sum of $50,000, conditioned for the faithful discharge of his duties as trustee. The Ætna Indemnity Company became surety upon Richardson's bond, and the complainant, American Bonding Company, became surety upon Mr. Buck's bond, and, for a premium paid to it, thereafter continued as such surety. After the death of Goodman, there was no change in the control, dominion, and management of the trust assets as they were then found in the separate possession of each of said trustees, Messrs. Buck and Richardson, nor was there any change in the mode of accounting to the court. Each trustee dealt with his part of the trust property independently of the other, made semiannual reports which were allowed and approved separately by the probate court, and made separate distribution to the beneficiaries of the income from the trust property in his possession. Each beneficiary of the trust was furnished with a copy of each of Mr. Richardson's semiannual accounts, was fully informed of its contents, accepted the income distributed to him, and acquiesced in the management of the trust.

In the tax litigation, the complainant, American Bonding Company, became surety on Mr. Buck's several appeal bonds, and for the purpose of securing it against liability thereon, United States bonds of the face value of $40,000 and a mortgage of $9,500, belonging to the trust, were placed in the joint and exclusive control of itself and Mr. Buck, where they remained until after the judgment of reversal by the Supreme Court of the United States on May 27, 1907. Mr. Richardson had no notice or knowledge of this transaction.

The net expenses of the tax litigation amounted to the sum of $10,041.15. In order to indemnify the trust funds in Mr. Buck's hands for this outlay, Mr. Richardson, as trustee, from time to time withheld and reserved, with the consent of the beneficiaries of the trust, certain parts of the semiannual income due them. By means of this expedient a fund was created in the hands of Mr. Richardson whereby the beneficiaries, out of their incomes, reimbursed the trust fund for its outlays.

On the 3d day of February, 1894, Mr. Goodman, as one of the trustees, executed to Mr. Buck, as his cotrustee, his power of attorney, whereby he constituted Mr. Buck his attorney to sign his name to any and all receipts, checks, notes, vouchers, acquittances, discharges, assignments, etc., necessary to the transaction of the business of the trust, also to take full charge and control of the trust property in Indiana, to make payments of the moneys derived from the investment of the trust funds to the beneficiaries, to accept proper receipts therefor, and properly to invest the trust funds. Mr. Buck gave Mr. Goodman a similar power of attorney. After the death of Mr. Goodman, a like power of attorney was given by Mr. Buck to Mr. Richardson and by Mr. Richardson to Mr. Buck. By virtue of the power of attorney, Mr. Buck, in his own name and that of Mr. Richardson as trustees, at different times between May 31, 1904, and September 6, 1906, released of record 13 mortgages that had been executed to William Augustus Goodman and James Buck, trustees, for moneys which he himself had loaned as trustee, these releases being made at the times he had received the redemption moneys in his own

hands. In addition to these, on the 11th day of April, 1904, Messrs. Buck and Richardson, as trustees, personally signed releases of two mortgages, the moneys being paid to Mr. Buck.

On the 9th day of January, 1909, Mr. Buck died insolvent. Upon his death search was made for the properties of the trust in all places wherein they could reasonably have been expected to have been found. This search resulted in the finding of United States bonds of the face value of $10,000, and mortgage securities and other properties of the value of $53,072.45, and no more. His accounts in the probate court, beginning with that filed on July 15, 1904, reported 11 mortgage loans, aggregating $33,900 made by him. On October 19, 1908, he entered upon his journal a mortgage loan for $3,000, and on December 10, 1908, another for $4,000. These loans, amounting to $40,900, were never made and were wholly fictitious.

The actual trust assets in Mr. Buck's possession on the 13th day of April, 1904, when his bond was given to the probate court, amounted to $127,821.98. The actual trust funds in his possession on the 30th day of June, 1904, the date of his first account after the appointment of Mr. Richardson, amounted to $127,000, and the amount of the trust funds found among his effects on the date of his death amounted to $64,750.11, which was turned over to his successor, defendant Morgan. Mr. Buck's defalcation, exclusive of interest, amounts to more than the penalty of his bond upon which complainant is surety.

The master's findings of fact also contain the following: "Mr. Buck for many years had enjoyed the confidence of Mr. Nash, who spoke of him in his will as his friend and made him a legatee in the sum of $3,000. He was and had for many years been in the real estate, loan, and investment business, had borne a good reputation in that line as a man of ability and integrity. He was also esteemed a good judge of values of land situated in Tippecanoe and the other counties hereinbefore mentioned. His dealings with the trust fund in his possession from the beginning, as far as they were known, did not justify any suspicion against his character for honesty, or any doubt as to his business capacity. The good reputation he had as a business man in his line warranted the reposing of the fullest confidence in the safety and the financial soundness of the investments that had been made by him. Richardson paid no attention whatsoever to the part of the trust property separately held by Buck, nor to his dealings with it. By reason of the judicial action of the probate court, Richardson was justified in looking upon it in the light of a separate trust from his own. He so conducted himself as trustee, excepting therefrom, however, the personal releases of the two mortgages above mentioned, and the creation of the reserve fund to indemnify Mr. Buck's outlays in the tax litigation. The power of attorney given by him to Mr. Buck to use his name and to act in his place and stead in the dealings of the trust property by Mr. Buck was, for conformity, made necessary by the creation of the joint trust. Richardson's conduct was that of a reasonable and prudent man dealing with his own property under the same circumstances. As such he was not called upon to question Mr. Buck's business capacity in making the reported investments, nor suspect him to be the rogue which the revelations after his death proved him to have been, nor to call for the inspection of the securities. The defalcations of Mr. Buck and his fraudulent concealment of them, as well as the success of the deception practiced by him in his accounts to the probate court, were not in any manner attributable to any act or omission on the part of Mr. Richardson in the discharge of his duty as trustee. There was at no time any complaint made as to the character or value of the actual investments made by Buck. The deficit and loss of $57,451.38 are wholly ascribable to his dishonest appropriation of the trust fund."

Lawrence Maxwell, of Cincinnati, Ohio, and Edward Duffy, of Baltimore, Md., for appellant.

Ferdinand Jelke, Jr., and W. M. Schoenle, both of Cincinnati, Ohio, for appellees.

Before DENISON, Circuit Judge, and EVANS and SESSIONS, District Judges.

SESSIONS, District Judge (after stating the facts as above). The master's findings of fact above set forth were approved and reaffirmed by the District Judge, are fully sustained by the evidence, and therefore, under the well-settled rule, will be accepted and adopted by this court.

This suit is not brought by the beneficiaries of the trust, nor by any one in their behalf or in privity with them. On the contrary, the surety for hire upon the separate bond of a defaulting trustee is seeking to recover for itself from a cotrustee, who has been guilty of no active wrongdoing, the amount of the defalcation upon the sole ground that the honest trustee did not prevent the malfeasances of the dishonest one. This fact alone is sufficient to distinguish the present case from Caldwell v. Graham, 115 Md. 122, 80 Atl. 839, 38 L. R. A. (N. S.) 1029; In re Beatty's Estate, 214 Pa. 449, 63 Atl. 975; Bermingham v. Wilcox, 120 Cal. 467, 52 Pac. 822, and similar cases upon which counsel for plaintiff place their chief reliance.

[1] It is settled that, as a general rule, a trustee is responsible only for his own acts or defaults, and, except for his own fraud or negligence, is not liable for the trust property which has been in the exclusive possession and under the sole control and dominion of a cotrustee. Peter v. Beverly, 10 Pet. 532, 563, 9 L. Ed. 522; Movius v. Lee (C. C.) 30 Fed. 298, 307; Ohio v. Guilford, 18 Ohio, 500, 509; Dyer v. Riley, 51 N. J. Eq. 124, 26 Atl. 327; McKim v. Aulbach, 130 Mass. 481, 483, 39 Am. Rep. 470.

[2] It is also settled that a trustee's obligation to his trust is met and satisfied by the exercise of the same measure of diligence that a man of ordinary prudence would be expected to exercise in the care of his own property under the same circumstances. King v. Talbot, 40 N. Y. 76; McCabe v. Fowler, 84 N. Y. 314; In re Bartol, 182 Pa. 407, 38 Atl. 527; Smith v. Bank of New England, 72 N. H. 4, 54 Atl. 385; Mattocks v. Moulton, 84 Me. 545, 24 Atl. 1004; Scoville v. Brock, 81 Vt. 405, 70 Atl. 1014.

[3] But, conceding the correctness of these rules of law, complainant insists that the conduct of Richardson does not measure up to their requirements in that the trust was not separable into parts, but was joint, requiring the joint and not the separate management of the trustees, while "Richardson paid no attention whatsoever to the part of the trust property separately held by Buck, nor to his dealings with it." So the real question to be decided is whether Richardson was justified in acquiescing in the division of the trust estate into two distinct and separate parts and in retaining the management of one part and permitting the other part to be and remain under the sole dominion and control of his cotrustee. The determination of this question involves and requires a consideration of all the peculiar circumstances, conditions, and difficulties attending and surrounding the creation, continuance, and management of the trust. The original trustees, Buck and Goodman, were both close and intimate friends and advisors of the testator and creator of the trust in his lifetime. Both had actively as-

sisted him with reference to his investments in their respective locali-
ties. Buck was a beneficiary under his will. It was natural that each
trustee should take active charge of the property with which he was
familiar. The tax litigation arose, and Buck was enjoined by the
courts of Indiana from removing from that state any of the assets of
the estate in his possession. Large adverse judgments were obtained
in the state courts. The final outcome of the litigation was very doubt-
ful. The attorneys for both trustees advised and the probate court of
Hamilton county, Ohio, authorized and directed a division of the es-
tate into two parts. Goodman was advised not to go into the state of
Indiana, and not to do anything to submit himself or the Ohio proper-
ty to the jurisdiction of the Indiana courts. This advice was given,
and this direction was made in the bona fide belief that such action
was necessary for the protection and preservation of the trust prop-
erty. Pursuant to such advice and direction the division was made,
or rather the natural division theretofore actually existing was for-
mally declared and made a matter of record. Thereafter, with the
knowledge and approval of the probate court, each of the two parts
of the trust estate was treated as a separate trust. Each trustee man-
aged his part without reference to the actions of the other. Each ren-
dered a separate account every six months without reference to the
account of the other. Each account was independently approved by
the probate court. Separate distributions of the income were made to
the beneficiaries. Goodman died, and Richardson was appointed his
successor. Then, for the first time, the trustees were required to fur-
nish bonds. Separate bonds were furnished. The Ætna Indemnity
Company became surety upon Richardson's bond, and the complainant
became surety upon the bond of Buck. In his application to the com-
plainant to become surety upon his bond, Buck truthfully described and
set forth the Indiana property in his possession for which the surety
was to become responsible. Acting under like advice and direction as
had been given to his predecessor, Richardson took charge of and
continued to manage and control the Ohio property, and permitted the
Indiana property to be and remain in the sole custody of Buck. By
the semiannual reports of the trustees and otherwise, the complainant
was, at all times, fully informed as to the condition and method of the
administration of the trust estate, and made no objection or protest
until after the death of Buck and the discovery of his defalcation.
Even at this late day, the gist of its complaint is that Richardson
was negligent in that he failed to personally examine the securities
held by his cotrustee or to investigate the Indiana records and thus to
discover that fictitious mortgages were being reported. But, to have
done either would have been to act contrary to the advice of his coun-
sel and in violation of the direction of the probate court. Besides,
Buck was the older trustee, appointed by the creator of the trust, and
was a man of reputed ability, honesty, and integrity. His reports were
made regularly, and the apparent income from the trust funds was paid
promptly to the beneficiaries. There was no reason to suspect him of
dishonesty. Under these circumstances, it cannot be said that Rich-
ardson was negligent, or that he was lacking in care, prudence, and
diligence in his actions with reference to the trust property. In re

Halstead, 44 Misc. Rep. 176, 89 N. Y. Supp. 806, and In re Halsted, 110 App. Div. 909, 95 N. Y. Supp. 1131, affirmed 184 N. Y. 563, 76 N. E. 1096; In re Westerfield, 32 App. Div. 324, 53 N. Y. Supp. 25, and 48 App. Div. 542, 63 N. Y. Supp. 10; Croft v. Williams, 88 N. Y. 384; Paulding v. Sharkey, 88 N. Y. 434; In re Cozzen's Estate (Sur.) 15 N. Y. Supp. 771; Ormiston v. Olcott, 84 N. Y. 339; Estate of Fesmire, 134 Pa. 67, 19 Atl. 502, 19 Am. St. Rep. 676; Colburn v. Grant, 181 U. S. 601, 21 Sup. Ct. 737, 45 L. Ed. 1021.

[4] The defendant trustees filed a cross-bill, seeking to recover against complainant the amount of Buck's defalcation to the extent of the bond. Complaint is made of the finding of the master, affirmed by the District Court, that complainant is equitably chargeable with interest on $50,000, the penal amount of its bond, from the time of the filing of its bill instead of from the date of the decree. The bill was filed May 26, 1909. The decree was made July 24, 1912. The record shows that on January 25 and February 8, 1909, the trustees, Richardson and Morgan, notified complainant of the death of Mr. Buck, and warned it to take measures for its own protection. They offered their co-operation. They made an indefinite estimate of the probable deficit of Buck, but made no demand of payment of a definite amount. The bill alleges that, in February, 1909, an inventory of all of the Indiana trust property which had been found after Buck's death was filed in the circuit court of Tippecanoe county. This inventory and the investigation then made showed that the deficit was large. Instead of availing itself of the tendered assistance and co-operation of the trustees and offering to make good the amount of the loss, complainant commenced this suit in which it sought to compel Richardson to hold it harmless from the payment of any sum whatsoever. As said by the master:

"While it was entitled to the aid of the court of equity to determine the amount of its liability under the bond, it cannot equitably take advantage of the delays incidental to this judicial inquiry and thus postpone the date from which interest should be charged. Spalding v. Mason, 161 U. S. 375, 395 [16 Sup. Ct. 592, 40 L. Ed. 738]; Sturn v. Boker, 150 U. S. 312, 342 [14 Sup. Ct. 99, 37 L. Ed. 1093]."

The decree of the lower court is affirmed.