## Beatty's Estate.

*Trusts and trustees—Negligence—Fraud—Surcharge—Will.*

Where a will appoints two trustees, and directs that the estate shall be invested in a particular manner, and one of the trustees takes the estate and embezzles it, the other trustee will be liable for the loss, if it appears that he made no effort to invest the estate in the manner directed by the will, and merely relied upon the statement of the other trustee that it had been so invested.

Argued Jan. 19, 1906. Appeal, No. 215, Jan. T., 1905, by Robert Stewart, Trustee, from decree of O. C. Phila. Co., Jan. T., 1884, No. 87, dismissing exceptions to adjudication in Estate of James Beatty, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Francis Chapman*, of *Chapman & Chapman*, and *John G. Johnson*, with them *S. Spencer Chapman*, for appellant.—A trustee is not an insurer of his cotrustee's fidelity.

The general rule is that one trustee shall not be responsible for the acts or defaults of his cotrustee: Fesmire's Est., 134 Pa. 67 ; Fesmire v. Shannon, 143 Pa. 201 ; Birely's Est., 7 Pa. Dist. Rep. 395 ; Myer v. Myer, 187 Pa. 247.

It was certainly not negligence on Stewart's part to allow McCartney to have the money solely in his hand at the inception of the trust. He, McCartney, had been the active executor and was the one most conversant with the estate. He was the trusted friend of the decedent, selected by him to manage his estate. The rule as to the liability of executors is more exacting than as to trustees: Sterrett's App., 2 P. & W. 419 ; Stell's App., 10 Pa. 149 ; Jones's App., 8 W. & S. 142.

It was the duty of Stewart when he discovered the condition of the estate to at once do what he could to protect it. It is conceded that he acted promptly and frankly and at once advised the cestui que trust of what he had done. His account was only of the property received by him from McCartney for the security of the estate and is unquestioned. That the estate is entitled to the benefit of that property, we concede. That it is entitled to more, we deny : Hatch's App., 8 Sadler's Supreme Ct. Cases 593.

*Henry J. Scott*, for appellees.—The trustee was properly surcharged : Weigand's App., 28 Pa. 471 ; Breneman v. Frank, 28 Pa. 475 ; Hilles' Est., 13 Phila. 402 ; Fesmire's Est., 134 Pa. 67 ; Myers v. Myers, 187 Pa. 247 ; Lafferty's Est., 184 Pa. 502 ; Stong's Est., 160 Pa. 13 ; Weldy's App., 102 Pa. 454; Irvine's Est., 203 Pa. 602; Stell's App., 10 Pa. 149.

OPINION BY MR. JUSTICE STEWART, March 19, 1906 :

It is only repeating a familiar rule to say that where there are cotrustees, each is liable individually no further than assets have come to his hands, except for his own fraud or negligence. It is the exception that involves the appellant in this case. He accounted for everything that he himself handled,

he was guilty of no fraud, but he was adjudged by the court below to have negligently omitted a duty in connection with his trust, which, had it been performed, would have avoided the loss which resulted to the estate from the fraudulent conduct of his cotrustee.   It is necessary to state the facts that we may see exactly what negligence he was guilty of, if any. Appellant and one James McCartney were executors of the will of James Beatty, deceased, and trustees as well.   Upon adjudication of the executor's account in the orphans' court of Philadelphia, February 18, 1884, there was awarded to them as trustees the sum of $14,009.46.   The will directed that it should be invested in good real estate securities, in the funded debt of the United States, the state of Pennsylvania or the city of Philadelphia.   At the time of the award the entire fund was in the hands of McCartney, who, as it appears, was at that period a man of excellent business standing, in good repute financially and otherwise.   None of the money ever reached the hands of the appellant; and none of it was invested in accordance with the directions contained in the will; though McCartney represented to appellant that he had invested it all in first mortgages held in the name of the estate.   Several years after the award appellant removed from Philadelphia, and was absent some six or seven years.   During this period, he occasionly returned, and when he did so, he made inquiry of his cotrustee in regard to the trust, and always received the same reply, that the funds were invested in first mortgages.   Appellant rested securely in the assurance he received from McCartney, who during all the time was regularly paying over to the parties entitled to the income its full equivalent, that the fund was intact and safely invested, until 1898 when for some reason his suspicions were aroused.   Through the aid of counsel by himself employed, he then discovered for the first time that he had been deceived by McCartney, that the latter had not invested the trust funds, but had appropriated them to his own use, with the result that they were lost to the estate.   He at once required McCartney to assign all of his individual property, consisting of some twelve or thirteen improved lots in the city of Philadelphia, all rather heavily encumbered, to a trustee to protect so far as it might reach the estate from loss. The rents and income from these several properties thereafter

derived passed into the hands of the appellant, who, in settling a separate account of his trust, stating therein that the several properties assigned by McCartney were assets of the trust estate, debited himself only with the rents received therefrom. McCartney at the same time filed his separate account, in which he charged himself with nothing but the interest on the principal sum of the trust fund, crediting himself with the amounts he had paid out. The learned auditing judge very properly declined to consider in this connection the encumbered properties conveyed in trust by McCartney as assets of the trust estate then being settled. He surcharged both accountants with the principal sum that had been awarded them as trustees. Exceptions to this adjudication having been dismissed, this appeal followed.

The case as thus presented, is clear of all difficulty. As soon as the final award was made to the trust fund, it became the duty of the trustees to invest the money in the way pointed out by the will. Making the investment called for the exercise of discretion and judgment, and therefore it was to be the act of both. Especially would this be so were the investment to be made as appellant subsequently believed on the representation of McCartney that it had been made, in real estate securities. Indeed it was the only matter in connection with the management of the trust that seems to have called for the exercise of discretion and judgment, since with the money once invested in proper securities, nothing remained to be done but to collect and pay over the interest to the parties entitled; but it is a fair conjecture at least, that it was this matter of investment that led to the appointment of two trustees rather than one. Except as both participated in the selection of the real estate securities, it would be in the power of either, through incompetence or willful misconduct, to inflict loss on the estate by the acceptance of securities worthless or inadequate. Manifestly not only the first, but the most important duty of the trustees acting jointly was to decide upon the character of the investment to be made, and make it. Its importance, if not understood at the time, was clearly revealed in the light of what happened subsequently. The question then that arises is not that asked upon the argument of the case—whether appellant was negligent in trusting to the representations of McCartney,

that he had invested the funds in real estate securities, without requiring him to produce and exhibit them. The mischief had then been done; and it is this circumstance that distinguishes the present case from that in Jones's Appeal, 8 W. & S. 142, a case much relied upon as an excusing authority here, but which has no applicability. The real question reaches further back, and has regard to what occurred when the fund passed into the control of the trustees, and it is this—was the failure of appellant to make or require a prompt investment of the fund in accordance with the terms of the will a negligent omission of duty? This question admits of but one answer; the duty was unmistakable, it was not performed, and no sufficient excuse is given for its omission. The failure of appellant so to act was negligence, and in view of all the circumstances of the case, it must be held to have been supine negligence. The question remains—is the loss to the estate through McCartney's misconduct fairly traceable to this neglect of duty on the part of appellant? It is that which made it possible. Had the investment been made in any of the securities named, certainly the loss could not have happened in the way it did. That it would still have been possible for the cotrustee to have despoiled the estate in some other way, is of no consequence in the present inquiry. We know how he did despoil it, and that the opportunity for so doing came to him in consequence of appellant's failure to invest the funds as he was in duty bound. The case admits of but one conclusion, and it is properly expressed in the decree surcharging appellants with the loss they occasioned.

The appeal is dismissed at cost of appellant and the decree is affirmed.