# RALSTON *v.* EASTER.*

TRUSTS AND TRUSTEES; DEFAULT OF COTRUSTEE; FORFEITURE; FEES AND
COMMISSIONS; EQUITY; ACCOUNTING; COSTS; COMPROMISE AND
SETTLEMENT.

1. Where the petition of one of two trustees for an order compelling his
cotrustee to deposit the trust estate, consisting of cash and deed
of trust notes, to their joint account, so that it will be under
their joint control, has been refused by the court, it is the duty of
the petitioning trustee to force an accounting by his cotrustee, and,
failing in that, to resign and file with the court and his successor
in office a full account of his transactions; and if after the denial
of his petition he continues to act as trustee for several years,
during which time the notes are paid and his cotrustee makes
worthless investments of the proceeds, and on resigning he makes
no report either to the court or his successor in office, he is liable
to his *cestui que trust* for the default of his cotrustee.

2. Where trustees default or permit a trust estate to be wasted through
their negligence, they may be held to forfeit any commissions or
fees that have been paid them during their trusteeship.

3. A trustee who for several years, and until his resignation and the
appointment of his successor, permitted his cotrustee to have the
sole management and control of the trust estate, consisting of cash
and deed of trust notes, during which time the cotrustee collected
the notes and invested the proceeds in his own business, and his
successor, who did not, on his acceptance of office, require an
accounting by his predecessor or the managing trustee, are both
liable to the beneficiaries of the trust estate for the default of the
managing trustee, and forfeit any commissions which they have
received; but since they have been at no time cotrustees, in an
accounting they should be charged individually, and not jointly,
with the commissions respectively received, as neither should be
held responsible for commissions received by the other.

---

* *Trustees—Liability—Default of Cotrustee.*—For cases passing upon the
liability of inactive trustee for defalcation of cotrustee, see note to *Caldwell* v. *Graham*, 38 L.R.A.(N.S.) 1029; as to the liability of coexecutor
for default of one permitted to manage the estate, see note to *Cheever* v.
*Ellis*, 11 L.R.A.(N.S.) 296.

4. Where trustees under a will are authorized in a pending equity suit to sell the trust estate, and do so, and the purchaser refuses to take title because certain remaindermen are not parties to the suit, and their *cestui que trust* institute another suit making such remaindermen parties, the trustees in an accounting are entitled to credit for the costs and expenses incurred in the second suit, even though the object sought by it could have been accomplished in the first suit.

5. Where a trustee permitted his cotrustee, since deceased, to have the sole management of the trust estate, with the result that the latter sold a portion of it and invested the proceeds in partially worthless securities, and thereafter the surviving trustee, under direction of the court, effected a compromise and settlement, whereby something was realized from such securities, he is nevertheless chargeable with the full face value of the securities, as his neglect made the compromise and settlement necessary.

No. 2755. Submitted April 8, 1915. Decided April 26, 1915.

HEARING on separate appeals by the respondents from a decree of the Supreme Court of the District of Columbia, sitting as a court of equity, requiring them to account as trustees of a trust estate created by will. *Modified and affirmed.*

The facts are stated in the opinion.

*Mr. William E. Richardson* and *Mr. Stanley D. Willis,* for the appellant Ralston, in their brief, cited: *Adair* v. *Brimmer,* 74 N. Y. 539; *Adams' Estate,* 221 Pa. 77; *American Bonding Co.* v. *Richardson,* 214 Fed. 897; *Brown's Appeal,* 1 Dall. 311; *Banks* v. *Wilkes,* 3 Sandf. Ch. 99; *Bates* v. *Underhill,* 3 Redf. 365; *Bruen* v. *Gillet,* 115 N. Y. 10; *Cocks* v. *Haviland,* 124 N. Y. 426; *Cogbill* v. *Boyd,* 77 Va. 450; *Colburn* v. *Grant,* 181 U. S. 601, 16 App. D. C. 107; *Cozzens Estate,* 15 N. Y. Supp. 771; *Croft* v. *Williams,* 88 N. Y. 384; *Davis* v. *Kerr,* 38 N. Y. Supp. 387; *DeForest* v. *Fulton F. Ins. Co.* 1 Hall, 130; *Earle* v. *Earle,* 93 N. Y. 104; *Easter* v. *Ralston,* 32 App. D. C. 12; *Emery* v. *Batchelder,* 78 Me. 233; *Fesmire's Estate,* 134 Pa. 67; *Glacias* v. *Fogel,* 88 N. Y. 434; *Green* v. *Gaskill,* 175 Mass. 265; *Re Halstead,* 89 N. Y. Supp. 806; *Hays* v. *Hays,* 3

Tenn. Ch. 88; *Re Halstead,* 89 N. Y. Supp. 806; *Joy* v. *Campbell.* 1 Schoales & L. 341; *Kip* v. *Deniston,* 4 Johns. 23; *Kirby* v. *Turner,* Hopk. Ch. 330; *Langford* v. *Gascoyne,* 11 Ves. 333; *Manahan* v. *Gibbons,* 19 Johns. 427; *Mills* v. *Hoffman,* 26 Hun, 594; *Monell* v. *Monell,* 5 Johns. Ch. 283; *Ohio* v. *Guilford,* 18 Ohio, 500; *Ormiston* v. *Olcott,* 84 N. Y. 339; *Paulding* v. *Sharkey,* 88 N. Y. 432; *Peckham* v. *Newton,* 15 R. I. 321; *Purdy* v. *Lynch,* 145 N. Y. 462; *Ringold* v. *Ringold,* 1 Harr. & G. 11; *Shipbrook* v. *Hinchinbrook,* 11 Ves. Jr. 252; *Sutherland* v. *Brush,* 7 Johns. Ch. 22; *Taylor* v. *Roberst,* 3 Ala. 83; *Underwood* v. *Stevens,* 1 Meriv. 712; *Walker* v. *Walker,* 88 Ky. 615; *Westley* v. *Clerk,* 1 Eden, 357; *Williams* v. *Nixon,* 2 Beav. 472; *Wilmerding* v. *McKesson,* 103 N. Y. 329; Hill, Trustees, 309, note 1; Perry, Trusts, §§ 453, 458; Story's Eq. § 1280, p. 520; 3 Williams, Exrs. 6th Amer. ed. p. 1930.

*Mr. Charles Cowles Tucker, Mr. Evans Browne,* and *Mr. James G. Phillips,* for the appellant Raleigh, in their brief, cited: 28 Am. & Eng. Enc. Law, 2d ed. 1069 *et seq.; Amer. Bond Co.* v. *Richardson,* 214 Fed. 897; *Bruen* v. *Gillet,* 115 N. Y. 10; *Colburn* v. *Grant,* 181 U. S. 601, 606, 607; *Copeland* v. *Bruning,* 44 Ind. App. 405, 414; *Croft* v. *Williams,* 88 N. Y. 384; 2 Dan. Ch. Pl. & Pr. 2d Eng. and 1 Am. ed. p. 1009; *Dyer* v. *Riley,* 51 N. J. Eq. 124; *Fesmire's Estate,* 134 Pa. 67; *Fisher* v. *Boody,* 1 Curtis, 206, 219; *Glenn* v. *McKim,* 3 Gill, 366, 386; *Hanson* v. *Worthington,* 12 Md. 441; *Hough* v. *Richardson,* 3 Story, 659; *McBurney* v. *Carson,* 99 U. S. 567; *McCabe* v. *Fowler,* 84 N. Y. 314; *McKim* v. *Aulbach,* 130 Mass. 481; *Re Halstead,* 44 Misc. 176, affirmed in 110 App. Div. 909, reaffirmed in 184 N. Y. 563; *O'Malley* v. *Mears,* 240 Pa. 373, 87 Atl. 862; *Ohio* v. *Guilford,* 15 Ohio, 593, 18 Ohio, 500; *Ormiston* v. *Olcott,* 84 N. Y. 339; *Peter* v. *Beverly,* 10 Pet. 562; *Preston* v. *Horwitz,* 85 Md. 164; *Purdy* v. *Lynch,* 145 N. Y. 462; *Re Rogers,* 31 App. Div. 632, 53 N. Y. Supp. 25 and 1113; *Snodgrass* v. *Snodgrass* (Ala.; 1914), 64 So. 594; *State* v. *Guilford,* 18 Ohio, 500, 509; *Stearns* v. *Page,* 1 Story, 204, 214; *Stowe* v. *Bowen,* 99 Mass. 194; *Townley* v. *Sherborne,* Bridgeman's Reports, 35; *Wagener's Estate,* 190

Pa. 513, 42 Atl. 955; *Re Westerfield,* 32 App. Div. 324, 53 N. Y. Supp. 25; *Wilmerding* v. *McKesson,* 103 N. Y. 329; *Woodbridge* v. *Bockes,* 170 N. Y. 596; *Worth* v. *McAden,* 21 N. C. 199.

*Mr. Leigh Robinson* and *Mr. Conway Robinson,* for the appellee, in their brief, cited, Adams, Eq. 58; *Allen* v. *O'Donald,* 28 Fed. 17–20; *Ashhurst* v. *Potter,* 29 N. J. Eq. 632; *Barney* v. *Saunders,* 16 How. 542; *Beatlie's Estate,* 214 Pa. 451–453; *Barr* v. *Hazeldon,* 10 Rich. Eq. 62; *Bennett* v. *Pierce,* 188 Mass. 187; *Birmingham* v. *Wilcox,* 120 Cal. 471–478; *Booth* v. *Booth,* 1 Beav. 125–130; *Brunridge* v. *Brunridge,* 27 Beav. 5; *Burrows* v. *Walls,* 5 De G. M. & G. 233; *Cannon* v. *Norton,* 14 Vt. 182; *Carruthers* v. *Carruthers* [1896] A. C. 663; *Clements* v. *Caldwell,* 7 B. Mon. 174; *Clements* v. *Moore,* 6 Wall. 315; *Colton* v. *Rand,* 92 S. W. 266–268; *Crane* v. *Hearn,* 26 N. J. Eq. 378; *Deaderick* v. *Cantrell,* 10 —, 272; *Dix* v. *Burford,* 19 Beav. 412; *Drozier* v. *Brereton,* 15 Beav. 221; *Dufond* v. *Smith,* 46 N. J. Eq. 217; *Duffy* v. *Logan,* 32 Bost. 587; *Earle* v. *Earle,* 93 N. Y. 104–113; *Fry* v. *Fry,* 27 N. J. Eq. 213; *Fenwick* v. *Greenwell,* 10 Beav. 412; *Hart* v. *Ten Eyck,* 2 Johns. Ch. 62; *Hays* v. *Hays,* 3 Tenn. Ch. 91; *Horton* v. *Brockelhurst,* 29 Beav. 504; *Hollis* v. *Lloyd,* L. R. 39 Ch. Div. 691; *Hutchins* v. *Hope,* 12 G. & J. 257; *Hughlett* v. *Hughlett,* 5 Humph. 475; *Lorse* v. *Douglass,* 13 N. J. Eq. 308; *Lothrop* v. *Smalley,* 23 N. J. Eq. 195; *Lewis* v. *Nobley,* L. R. 8 Ch. Div. 591; *Lincoln* v. *Wright,* 4 Beav. 430; *Litchfield* v. *White,* 7 N. Y. 438; *Loud* v. *Winchester,* 52 Mich. 174; *McCoy* v. *Rhodes,* 11 How. 141; *MacCubbin* v. *Cromwell,* 7 G. & J. 157–168; *McMurray* v. *Montgomery,* 2 Swan, 375; *Munford* v. *Murray,* 6 Johns. 1; *Minneapolis Trust Co.* v. *Menage,* 73 Minn. 448–54; *Murphy* v. *Delano,* 95 Me. 235; *Moeller* v. *Poland,* 80 Ohio St. 448; *Nickerson* v. *Meacham,* 14 F. 881; *Oliver* v. *Court,* 8 Price, 127–173; *Patterson* v. *Booth,* 103 Mo. 415; *Purdy* v. *Lynch,* 72 Hun. 276; *Rehan* v. *Wesley,* 29 Beav. 5; *Richards* v. *Seal,* 2 Del. Ch. 266; *Ringold* v. *Ringold,* 1 H. & G. 12;

*Robinson* v. *Cathcart*, 3 Cranch, C. C. 379; *Rowe* v. *Bentley*, 29 Gratt, 756; *State* v. *Guilford*, 15 Ohio, 594; *Thompson* v. *Finch*, 22 Beav. 316; *Crutch* v. *Lamprell*, 20 Beav. 116; *Re Turner*, L. R. 1 Ch. Div. 536; *Vollmer's Appeal*, 61 Pa. 131; *Walter* v. *Slater*, 5 App. D. C. 361; *Wigglesworth* v. *Wigglesworth*, 16 Beav. —.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from a decree of the supreme court of the District of Columbia requiring appellants, defendants below, to account as trustees for the proceeds of an estate created by the will of one Mary E. Macpherson. The decree appealed from was made in the original equity proceeding in the estate, No. 7,907.

Various proceedings, not material to this inquiry, were had prior to October 17, 1890, when defendant William H. H. Raleigh and one Thomas E. Waggaman were appointed and qualified as trustees of said estate. The estate consisted almost wholly of real estate, which, under the terms of the will, could be either held by the trustees or sold and the proceeds invested, the income in either event to go to certain life tenants named in the will, of which plaintiff, Alice Tyler Easter, is now the sole surviving beneficiary.

By order of the court the trustees sold the real estate for $17,460, $2,500 in cash, and the balance in three equal instalments of three, six, and nine years, secured by deed of trust on the property, with interest at 6 per cent per annum, payable semi-annually. The purchasers refused to consummate the sale for the reason that only the life tenants were parties to the original cause. Accordingly, another equity suit, No. 14,427, including the remaindermen as parties, was instituted by the life tenants. In this suit a decree was made, among other things, as follows: "It appearing to the court that the sale now reported by the said trustees was heretofore finally ratified by decree passed in Equity No. 7,907 in this court, and by the evidence taken in this cause, it appearing to the court that the

said sale is a good one, it is this 18th day of March, A. D. 1893, ordered by the court that the sale so reported be and the same is hereby finally ratified and confirmed. And it is further ordered that this cause be and it is referred to the auditor of this court."

The total corpus of the estate which appears to have come into the hands of Raleigh and Waggaman as trustees consisted of cash from the former trustee, $923.69; cash from the sale of real estate, $2,500, and notes for the deferred payments on the real estate, $14,959.98; making a total of $18,383.67. Out of this the trustees were allowed credits, here uncontested, amounting to $1,126.10, leaving a net corpus of $17,257.57. With this balance the trustees were chargeable. Out of it was paid the costs and attorneys' fees in conducting suit No. 14,427, and also commissions to the trustees for making the sale and for handling the estate. The balance of the cash, $611.25, and the notes, were turned over to the trustee Waggaman to collect the interest thereon from time to time, and pay it over to the beneficiaries.

On February 13, 1895, Raleigh petitioned the court to require Waggaman to deposit the money and notes belonging to the estate in the bank to the joint credit of the two trustees. The petition was dismissed by the court, and Raleigh thereafter, without further objection, continued as trustee for over four years. In the meantime, and before the resignation and release of Raleigh, and the appointment and qualification of defendant Ralston as his successor in 1899, the three notes representing the deferred payments on the purchase price of the real estate had been paid in full to Waggaman, and investment of the proceeds made by him. In reinvesting the money the makers of the notes were employees of Waggaman, and the notes were secured on property owned in whole or in part by Waggaman. The investments, therefore, were such as to enable Waggaman to use the whole of the estate in his own business. It is unnecessary to review the transactions of Waggaman. It is sufficient to say that they were of a character which would not receive the approval of any court. Waggaman's conduct

amounted to malfeasance, and his liability, were he alive, could not be questioned.

We now come to the consideration of the facts touching the trusteeship of Raleigh and Ralston. Raleigh, it appears, permitted Waggaman to take the cash and hold the securities (which were payable to Waggaman and Raleigh jointly as trustees) and handle them exclusively. True, he appeared to the court in 1895 to require Waggaman to deposit the funds and securities belonging to the estate in a bank, where he presumably could have access to them, and from time to time, at least, acquaint himself with the status of the estate. But when the court for some unaccountable reason denied the request, it was his duty then to have forced an accounting by Waggaman, and failing in this, to have resigned and filed with the court and his successor in office a full account of his transactions. Instead, however, he continued as cotrustee with Waggaman for over four years, and until after the original purchase notes had been paid and the worthless investment of the proceeds had been made by Waggaman. When he was released he made no report either to the court or to Ralston, his successor in office.

Ralston assumed the office of cotrustee with Waggaman without any report from Raleigh as to the cotrusteeship between him and Waggaman. In his answer the following admission appears: "It may be that the trustee Raleigh was allowed to resign without accounting, and never has accounted, but, if so, it was done with the tacit or express consent of the attorneys for the two petitioners, who at all times had it in their power to require an accounting, had they considered that one was due. That it is true that this respondent accepted the condition of the trust as he found it when he became appointed, and that he did not undertake to audit the past accounts of said Waggaman and Raleigh, and would have had no authority to do so."

Ralston avers, however, in his answer, "that a full and correct statement of the condition of the trust" was furnished him by Waggaman at the time he became trustee. He then sets out the report, which purports to give a full statement of the invest-

ments as they then existed. Had he examined the report with
any degree of care, he would have discovered that the makers
of the notes were employees of Waggaman, and that the notes
were secured by trusts on property owned in whole or in part
by him, which would have admitted of but one reasonable con-
clusion,—that Waggaman was using the estate in his own busi-
ness.

The court below, commenting upon the neglect of Ralston to
require an accounting from Raleigh, or to fully acquaint him-
self with the status of the estate and the securities held by
Waggaman, said: "Ralston's predicament is even worse than
that of Raleigh. The whole estate that came to the legal con-
trol of the new trusteeship was made up by improper invest-
ments. If he had made any substantial inquiry he would have
learned that fact. He would have learned that the makers of
the notes were mere figureheads for Waggaman, of no financial
responsibility, and that the property upon which they purported
to be secured was Waggaman's property in whole or in part.
In short he would have learned that Waggaman was using the
estate in his own business. Instead of inquiring, he chose to
rely upon Waggaman's high reputation for integrity and wealth,
to leave the whole care and management of the estate to Wagga-
man, and to receive the commissions for Waggaman's dealings
with the trust estate, thereby making Waggaman's acts his own.

Nothing appears to have been done by Ralston until in 1904,
when Waggaman's bankrupt condition became known. He then
demanded of Waggaman that he turn over the assets of the es-
tate to him, or place them under his control. Investigation
disclosed that the deeds of trust securing almost $10,000 of the
estate had been released under direction of Waggaman, and
the notes could not be found. Ralston secured possession of
the remaining notes, aggregating $5,786.66. The bondsmen
were called upon and advanced $10,000, the full penalty of the
bond, which a little more than satisfied the lost securities. Of
the remaining securities, one note for $800 is alleged to have
been paid. Foreclosure proceedings were instituted against the
real estate securing the remaining notes. This resulted in an

offer of compromise by John F. Waggaman, brother of the defaulting trustee. The offer was accepted and approved by the court, which resulted in a loss to the estate of about $2,000.

The court below entered a decree that Waggaman, Raleigh, and Ralston, trustees, be held to have forfeited all right to any commission or compensation for handling said estate; that they be charged jointly and severally with the full corpus of the estate, $17,257.57, together with interest thereon from the date when the respective items making up said estate were received by them, or any of them, until paid; that they be given credit for the $10,000 received from the sureties of Waggaman, for the sum received in the compromise from John F. Waggaman, for whatever may have been received from the trustee in bankruptcy of Thomas E. Waggaman, and for all sums actually distributed to the beneficiaries of the estate, with interest thereon, as of the respective dates of such distribution. The decree further directs that the cause be referred to the auditor to state this account.

We think the court below erred in charging defendants with costs and expenses incurred in equity suit No. 14,427. While the action was totally unnecessary, the court had jurisdiction to pursue this indirect and expensive course in directing the sale of the real estate. Under the terms of the will, the trustees were vested with full power to sell and convey the real estate and invest the proceeds. Hence, the order confirming the sale in the original equity cause, No. 7,907, was all that was required to vest good title in the purchasers. But if the remaindermen had been essential parties, they could have been brought in by rule in that case. Suit No. 14,427 was instituted by the beneficiaries, and not at the instance of the trustees. They had already done all that was required under the trust, and no default had occurred on their part. We think, therefore, that they should not be penalized for the costs and expenses of this unnecessary litigation.

It is well settled, however, that where trustees default or permit a trust estate to be wasted through their negligence, they may be held to forfeit any commissions or fees that have

been paid them during their trusteeship.  *Lathrop* v. *Smalley,* 23 N. J. Eq. 195; *Dufford* v. *Smith,* 46 N. J. Eq. 217, 18 Atl. 1052.  In *Barney* v. *Saunders,* 16 How. 535, 542, 14 L. ed. 1047, 1050, the court said: "But on principles of policy as well as morality, and in order to insure a faithful and honest execution of a trust, as far as practicable, it would be inexpedient to allow a trustee who has acted dishonestly or fraudulently the same compensation with him who has acted uprightly in all respects.  And there may be cases where negligence and want of care may amount to a want of good faith in the execution of the trust as little deserving of compensation as absolute fraud.  If trustees, having a large estate to invest and accumulate for the benefit of an infant, for a number of years, will keep no books of account, make out no annual or other account of their trust estate; if they risk the trust funds in their own speculations; lend them to their relations without security; and in other ways show reckless disregard of the duties which they have assumed, they can have but small claim on a court of equity for compensation in any shape or to any amount."

We are of the opinion, however, that, since defendants Raleigh and Ralston were at no time cotrustees, they should be charged individually with the commissions or fees respectively received.  Certainly, Ralston cannot equitably be held responsible for fees received by Raleigh long before he (Ralston) became trustee, and, in fact, before any default or mismanagement of the estate occurred.  Likewise, Raleigh should not be held for fees or commissions paid Ralston long after he (Raleigh) had relinquished his trusteeship.  As to general losses resulting from the mismanagement of the estate, defendants must be held jointly liable, since the investments existed through the cotrusteeship of each of the defendants with Waggaman.  Defendants are also jointly liable for any fees or commissions paid their cotrustee Waggaman, provided they cannot be recovered from his estate.

The joint liability of a trustee for negligently allowing a cotrustee to dissipate the trust estate is well settled.  *Booth* v.

*Booth,* 1 Beav. 125, 8 L. J. Ch. N. S. 39, 2 Jur. 938; *Oliver* v. *Court,* 8 Price, 127, Daniell, 301, 22 Revised Rep. 720; *Burrows* v. *Walls,* 5 De G. M. & G. 233, 3 Eq. Rep. 960, 3 Week. Rep. 327; *Lewis* v. *Nobbs,* L. R. 8 Ch. Div. 591, 47 L. J. Ch. N. S. 662; *Trutch* v. *Lamprell,* 20 Beav. 116; *Thompson* v. *Finch,* 22 Beav. 316, 25 L. J. Ch. N. S. 681; *Hughlett* v. *Hughlett,* 5 Humph. 453; *Moeller* v. *Poland,* 80 Ohio St. 418, 89 N. E. 100; *Beatty's Estate,* 214 Pa. 449, 63 Atl. 975; *Earle* v. *Earle,* 93 N. Y. 104; *Bermingham* v. *Wilcox,* 120 Cal. 467, 52 Pac. 822; *McMurray* v. *Montgomery,* 2 Swan, 375; *Smith* v. *Pettigrew,* 34 N. J. Eq. 216. The rule is clearly stated in *Deaderick* v. *Cantrell,* 10 Yerg. 264, 272, 31 Am. Dec. 576, as follows: "Two trustees are appointed to execute a trust the final operation of which is not to be completed for years; they undertake to execute it; they are intended as checks on each other, have an equal control over the fund, are mutually bound to attend to the interest of the trust, and shall one of them be permitted to go to sleep and trust everything to the management of his cotrustee, and when, in the course of ten or fifteen years, the fund having been wasted and his cotrustee insolvent, he is called upon to make it good, shall he be heard to say that he had implicit confidence in his companion, and permitted him to retain all the money and appropriate it as he pleased, and that he ought not therefore to be charged? Surely not; it is neither law nor reason. This is what Wharton did, and this is his excuse and reason why he should not be made liable for the act of his cotrustee. We therefore think that, if this were a discretionary trust, Wharton is bound to make good the losses occasioned by Cantrell."

We agree with the court below that there is nothing in this record reflecting in the slightest degree upon the honesty and integrity of either Raleigh or Ralston. It is purely a case of civil liability arising under well-established rules of equity. No intimation is made by counsel for plaintiff of moral turpitude on the part of these trustees. If their neglect had not been so complete and wholly inexcusable, there might be ground for extending relief, but there is not a mitigating circumstance in the

whole transaction.   Waggaman from the beginning was per-
mitted to do as he pleased with the trust estate, and these co-
trustees neither inquired into the condition of affairs themselves,
nor took any active steps to have the situation investigated by
the court.   It is now urged that Waggaman alone is responsible,
but, as suggested by the court below, "such a holding would go
far to destroy the confidence of men in courts and their officers
as guardians of property."

It is earnestly contended that, inasmuch as the compromise
with John F. Waggaman, in which the estate lost about $2,000,
was made under the direction of the court, the trustees should
not be held liable for the loss.   It may well be that the compro-
mise ordered by the court was a good one and netted the estate
more than could have been derived from the foreclosure proceed-
ings.   But the difficulty is that the compromise was made neces-
sary by the neglect of these defendants.   Had they examined
into the nature of the securities which Waggaman held, and
made  a timely representation to the court, the compromise
would not have been necessary.   Defendants are liable for the
loss sustained by this compromise, not through the action of
the court in ordering it, but because their neglect made the
compromise necessary.

The court below is directed to amend its decree in such form
as to charge the defendants Raleigh and Ralston with the full
corpus of the estate, $17,257.57, less any fees or commissions,
as of the dates thereof, which either of said trustees may have
received from the estate, and to give the defendants credit, in
addition to those credits allowed by the court below, for the
following costs and expenses, as of the dates thereof, in equity
suit No. 14,427: costs of suit, $53.95; W. H. H. Raleigh, no-
tary fees, $1.00; costs of reference in equity suit No. 7,907,
$35; auditor's fees, $20; costs of printing, $25; individual
costs and expenses to Raleigh; attorney's fee to W. D. Davidge,
and all attorneys' fees paid out of the corpus of said estate in
said suit No. 14,427; and to further amend the decree so as to
require defendant Raleigh to account to the estate for any fees
or commissions as of the dates thereof, which may have been

paid him either for making sale of the real estate or for services as trustee, with interest, and to require defendant Ralston to account to the estate for any commissions or fees received by him, as of the dates thereof, with interest. With these amendments, the decree is affirmed, and the costs of this appeal will be divided equally between the plaintiff and defendants.

*Modified and affirmed.*

A motion for rehearing by appellant was denied May 10, 1915.

A motion for rehearing by appellee was denied May 21, 1915.